J. T. GRIFFIN v. W. L. DOGAN and C. W. MARTIN.

1. CHANCERY—TAX-TITLES.—As a general rule, it is incumbent on the complainant who relies upon a tax-title, to allege that the assessor and collector have each done all the acts and things prescribed by law to make the owner of the property debtor for the taxes, and to create a charge upon the property, and also that all those conditions have been complied with, the compliance with which authorizes a sale for the non-payment.

2. SAME—ACT OF 1860.—The "act for the better security of titles to land," etc., approved February 10, 1860, does not relieve tax assessors or collectors from any of their duties under the previous laws, but merely relieves tax sales from all infirmities except such as arise from "fraud or mistake in the assessment or sale," or from the actual payment of the taxes "before sale."

3. SAME—PRACTICE.—The existence of such exceptional matters as, under the act of 1860, invalidate a tax-deed, need not be negatived by the party propounding the deed, but must be adduced by the party who impeaches the deed.

4. TAXING POWER—EMINENT DOMAIN.—Sales for taxes and taking private property for the public use, though both referable to the sovereign power of the state, are different and distinct; the one being for the recovery of a debt due the government, the consideration for which is the protection of person and property, and for the enforcement of the performance of a duty by the taxpayer, the performance of which is essential to the maintenance of government; and the other being the appropriation of private property, or some use or easement respecting it, for the public use, full compensation therefor first being made; the latter being always done under judicial or *quasi* judicial proceedings, and the former by the summary action of the tax collector.

5. SAME—REBELLION.—Arrearages of taxes accruing during the rebellion are not presumed to have been laid in aid of the rebellion; but if so, must be set up and proved; and, in that case, and to the extent so proved, they will be held illegal.

APPEAL from the chancery court of Lee county. WHITFIELD, Chancellor.

The opinion of the court contains a statement of the case.

*A. H. Handy*, for appellant,

Insisted that the bill is in strict conformity with the statute, and the defendants had full opportunity to show, if they could, that any of the objections to the sale existed which are recognized in the statute, as the only grounds for invalidating the tax sale, under which the appellant claims. The grounds of demurrer are clearly insufficient. The first states matter not appearing on the face of the bill. The second is founded on the

decision in Griffin v. Mixon, 38 Miss. 424. The doctrine of that case should not be adhered to, since it is almost universally held that the legislature has power to establish general rules for a special and particular class of cases, and that "due course of law" does not require a hearing in court. Pot. Dwar. Stat. 470; Cooley on Const. Lim. 355, 368, and cases cited; Sandige v. Hopkins, 31 Miss. It was not necessary that the bill should state that all the requirements of the statute had been complied with in the assessment and sale. Such matters should come from the defendant by way of defense. The proof of fraud or mistake is upon the defendant, and being matter of evidence it was competent for the legislature to establish a rule to govern it. Cooley Const. Lim. 368.

The law did not require the deed to the state to be filed in the probate clerk's office on or before the second Monday of July. Rev. Code, 1857, p. 81, art. 39. But had that been the law, it was not necessary to be stated in this bill. It is required to be placed there only with a view of redemption, so far as the owner of the land is concerned, and that the clerk may indorse it "cancelled" when redeemed; and the right of redemption runs from "the day of sale" for two years, and not from the date of deposit of the deed in the office. But there was no redemption within the time limited, and the matter of depositing the deed was immaterial to the party's rights.

But the provision is merely directory, being "matter of direction and no more." Pearce v. Morrice, 2 Ad. & Ell. 96; 40 Miss. 293; 29 Md. 377, 516. Generally, where a statute merely specifies the time within which a public officer is to perform an act regarding the rights and duties of others, it will be considered as directory, unless the nature of the act to be performed, or the language of the statute shows, that the designation of time

was intended as a limitation of power.   6 Wend. 487;
5 Cow. 269; People v. Cook, 8 N. Y. 67; 4 Seld.

But if it was mandatory, being a mere ministerial
act and the duty of the collector to file the deed, it will
be presumed, in the absence of all proof, to have been
done, especially when the land owner has not been pre-
judiced by the failure.   Broom's Leg. Max. 847.

Moreover, if essential, the allegation or proof of it
would be dispensed with in this proceeding under the
provisions of section seven of the statute of 1860.

The power to assess taxes was necessary to the pur-
poses of civil administration in the state carried on dur-
ing the war, and was therefore legitimate.   Buchanan
v. Smith et al. 43 Miss. 98; Texas v. White, 7 Wall.
733.   The objection that the tax was in aid of the re-
bellion, proceeds on the presumption of a wrongful and
illegal act, which is never to be indulged.   For since
the taxes might have been properly assessed for a legal
purpose, pending the war, they must be presumed to
have been legal, and it is incumbent on the defendant
to show, by plea or answer, its illegality.   On demurrer
to the bill in this case, the presumption must prevail
that the taxes are legal.   But the taxes were those due
in 1861, which, in fact, were levied before the war
took place, under the operation of our revenue system,
and of this the court will take judicial notice.

*Green & Pickens*, on the same side.

If the statute referred to in the bill had not been
passed, the causes of demurrer assigned could not be
allowed, being matters of defense by answer or plea.
Dan. Ch. Pl. and Pr. 565, *et seq*.   If any of the ele-
-ments necessary to constitute a perfect title in plaintiff
are wanting, they should be set up in defeasance of his
title by proper pleading and proof.   1 Johns. Ch. 58;
2 Black, 519.   The act under which this bill is filed

furnishes to the defendant the defense he shall make. Act February 10, 1860, sec. 7.

It is for "fraud or mistake in the assessment or sale," or "proof that the taxes for which the same was sold had been paid prior to such sale." The bill directly avers "that there was no fraud or mistake in the assessment or sale of the land, and that the taxes had not been paid." The demurrer admits this to be true. The causes assigned, if they could be set up by demurrer, are included in the above negative averment.

Our revenue law provides that, upon the failure of the owner of the land to pay his taxes, it shall be put up by the sheriff and sold to the highest bidder; and if no one bids a sufficient amount to pay the taxes and cost, then the sheriff is required to deed the same to the state; that such deed shall remain in the clerk's office two years, during which time the owner may redeem, and in default of his doing so the same shall be advertised for the space of sixty days, and sold to any one who will pay a sufficient amount to meet the accumulated various charges which have accrued on account of the default of the owner. The owner, after this, cannot redeem; he may enter. The act above referred to extends the time of redemption, but does not say that, in the event the owner still refuses to redeem, the same shall not be sold; it only gives to the owner another chance to get his land; but does not curtail the rights of others, if he does not redeem.

The bill avers that the "time for redemption had expired." The demurrer admits this to be true. And, if true, the defendant has had his day, and the indulgence of his government has ceased; and, by his failure and refusal to pay his taxes, he has lost his land. 4 Wall. 210.

It is contended, for defendants, that the tax for which the land was sold was, to some extent, for military purposes. They admit that a portion of the tax was for

the rightful revenue of the state. Then, if the court should hold that the consideration of the tax-deed, so far as the military tax is concerned, is void; that the whole is void; that, because the state attempted to collect an illegal tax, the owner has a right to refuse to pay that which is lawful. But it has been decided by our supreme court that the state had a right to collect this tax from its own citizens. See Hill v. Boyland, 40 Miss. 618; Weaver v. State of Texas, as to the power and rights of the states in rebellion concerning their own domestic affairs and legislation relating thereto.

*Houston & Reynolds*, for appellees.

I. Appellant either has a perfect legal title to the lands or he has no title at all. It cannot be pretended that the deed from the state vested in appellant an equitable title—it is a legal title or nothing. If it is a legal title, then appellant's remedy by an action of ejectment is plain, full, adequate and complete, and he should have proceeded in a court of law.

It is true, that the act of 1860 confers jurisdiction upon courts of equity in such a case as is made by appellant's bill, but the act is unconstitutional, because it attemps to confer upon courts of equity common law jurisdiction. Blanton v. King, 2 How. 861 ; Cowden v. Cowden, 3 How. 806 ; Carmichael v. Browder, 3 ib. 252.

II. The lands in controversy were forfeited to the state in 1862 for the taxes of 1861. The state of Mississippi seceded on the 11th of January, 1861. All taxes which were assessed in the year 1861 were in aid of the rebellion, and, therefore, illegal and void. An examination of the legislation of 1861 will show that the taxes which were assessed and collected were in aid of the rebellion. See Thomas v. Taylor, 42 Miss.; Mississippi Central R. R. v. the State, 46 Miss. 157.

III. The deed shows that the lands were sold to the state on the eighth day of July, 1862, and this fact is

averred in the bill. This was not the time appointed by law for such sale. The deed and bill show a non-compliance with the law, and the sale to the state is a nullity. Moore v. Brown, 11 How. (Miss.) 414; Hogins v. Brashears, 8 Eng. 242. The seventh section of the act of 1860 does not change this rule.

IV. But the act of 1860 does not apply to purchasers of lands from the state, but only to purchasers at a tax sale. The act must be construed strictly, and we insist that the language of the first section, taken in connection with the sixth, limits the special remedy therein provided to purchasers at a tax sale.

V. The seventh section of the act is unconstitutional. The legislature has no right to declare that a tax-title shall not be impeached, except for certain specified causes. It may make the deed *prima facie* evidence of a compliance with all the requirements of law. This it has not done in the seventh section, but that the deed shall not be impeached except for the enumerated causes. 9 Ga. 354; Blackwell on Tax Titles, 79, 80, 90, notes; 3 Yerg. 41.

*A. H. Handy*, for appellant, in reply.

I. If it is to be conceded that a court of law has jurisdiction to adjudicate the perfect title at law of the plaintiff in error, yet a court of equity has jurisdiction of a case of this nature, upon two well defined grounds: 1. The rule that equity has no jurisdiction where there is a remedy at law does not apply where the jurisdiction in equity is expressly conferred by statute. Freeman v. Guion, 11 S. & M. 58, 64. 2. This is in the nature of a remedy provided by statute to remove doubts and clouds upon the title, in order to secure purchasers claiming under tax titles. And, though the plaintiff might have recovered at law, the legislature thought fit to provide this remedy in equity; which, while it enables the original owner to have his just rights pro-

tected in a competent court, at the same time secures the rights of purchasers claiming under tax-deeds.

It is perfectly settled that matters pertaining to the remedy were proceedings in court, and, if evidence, are fully within the legislative power.  Briscoe v. Anketell, 28 Miss. 371; Coffman v. Bank of Kentucky, 40 ib. '35, and cases cited.

The statute is clearly constitutional.  It provides a remedy and prescribes rules of evidence applicable to future transactions—establishing rules of a general nature, and not capable of operating to the prejudice of the just rights of the citizen.  Cooley on Const. Lim. 361–367; ib. 364–367; as to evidence, ib. 288, 367–369 (2d ed.).  Griffin v. Mixon, 38 Miss., and cases cited in dissenting opinion.

SIMRALL, J.:

Joseph Griffin sued in chancery, under the act of 10th February, 1860, "for the better security of titles to lands held and claimed under tax ·sale and tax-title," to establish and confirm a title derived mediately to him from a tax collector's sale, and deed.  He states in his bill that he entered or bought the land in question from the state, and received a deed therefor, the 6th of August, 1868.  The land was sold to the.state on the 8th of July, 1862, for the non-payment of taxes assessed and due thereon for the year 1861.  There was no fraud or mistake in the assessment and sale of the land; the taxes were due and unpaid prior to the sale.  The period allowed for redemption has expired.

Dogan and Martin, who were made defendants as having interest, demurred for several special causes.

The laws relating to the public revenue and the mode of collecting, by distress and sale, against the delinquent debtor, have been so frequently changed by the legislature, that it is necessary to carefully note the time of the sale, so as not to mistake the law applicable to the

particular case.   Most of the causes assigned have ref-
erence to a non-compliance with the requisitions pre-
scribed in the Code of 1857, art. 35, pp. 79, 80, to wit:
The sale was irregular, and conveyed no title to the
state, because the bill does not aver:   1.  "That there
was no sufficient personal property of the delinquent
debtor to be found."   2. It does not aver that there
was no occupant of the lands of whom demand of pay-
ment could be made.   3. It does not show a legal
assessment.   *   *   *   As a general rule, it is incum-
bent on the plaintiff who relies upon title acquired
under a tax collector's sale and deed, to allege that the
assessor and collector have each done the acts and
things prescribed by the law.   To make the owner of the
property debtor for the taxes, or create a charge upon
it, and also that all those conditions have been complied
with, it authorizes a sale for non-payment.   This is
necessary, unless the legislature has by positive enact-
ment dispensed with the allegations and proof of some
of these conditions.   The general rule is, that a sale of
lands for taxes is the exercise of a power granted by
statute, and there must exist and concur all the facts
which constitute the owner legally debtor to the state,
or create the charge and which confer the right to sell
for non-payment.   If this case were controled by the
acticle 35 referred to, the sale could not be made except
upon the condition, that the tax debtor had no sufficient
personal property.   2. That if the lands were never
occupied, a demand of the money must be made of the
actual debtor, and if not occupied, that fact must appear
as excuse.

The act of 1860 changes the former law, in one or
more important particulars.   The seventh section de-
clares, "that (subject to redemption) sales of lands for
taxes   *   *   hereafter made, shall be valid to all in-
tents and purposes, and that no such sale shall be im-
peached or questioned in any manner or for any cause,

saving fraud or mistake in the assessment or sale of the same, or upon proof that the taxes have been paid."

This statute does not relieve the assessor or the collector from any of the before-mentioned duties enjoined by the law of 1857; but it does relieve the purchaser's title from all other infirmities, except such as arise out of "fraud or mistake in the assessment or the sale," or when the "taxes have been paid before sale."

If the *onus* of proof is upon the complainant to show that there has been no "mistake or fraud," and no payment, he ought to have alleged the manner of the assessment and sale."  If, however, those matters should come from the other side by way of defense, then the defendants must point out the "fraud or mistake" and show "payment."

We think that the rendering of the words, so as to attain the law-makers' intention, which is the life of the law, would be to hold that the declaration, that the "sale shall be valid to all intents and purposes," gives the title *prima facie* validity, subject, however, to be defeated for "fraud or mistake in the assessment or sale, or payment."  The words "no such sale shall be impeached or questioned for any cause, saving," etc., implies that the enumerated causes of impeachment and question must be adduced by defendant.

In this view, the general allegation in the bill is sufficient, and the defendants, in their answer, must show mistake, fraud or payment.

The first and second assignments of causes of demurrer call in question the constitutionality of the laws under which the sale was made, as "that the sale was not adjudicated by a court, or by due process of law," and that it was "taking private property for public use without compensation first made."

It is too late at this day to controvert a sale of property for non-payment of taxes, on the ground that it is a taking of private property for public use.  As said by

us in a former judgment at this term: " The taxing power and the taking of private property for public use, are distinct, though both are referable to the sovereign rights of the state.    The former is a debt, the consideration being the protection by government of person and property.    The latter is an enforced or compulsory sale of property, either absolutely or for some easement thereon, for its value in money, first paid.    Although the appropriation to public use is accomplished by judicial proceedings, or *quasi* such, which is evidence of divesture of private right, and a mode of ascertaining value, it has the elements of a compulsory sale.

But a sale of property for non-payment of taxes is not an appropriation of the thing sold to any public use, but is a method whereby the debt due from the delinquent tax-payers, on the charge upon the property is enforced and realized.    It was said, that a tax sale was not an appropriation of private property to the public use, within the constitutional provision on that subject, in Williams v. Cammack, 27 Miss. 209, and very correctly so said.    But the tax due, whilst it is a debt due from the citizen to the state, is something more—it is a "duty."    It is not due by contract in the legal sense, as is a debt between individuals; it precedes all the obligations of contracts, supersedes all private liens. Speedy and punctual payment is absolutely essential to the support and maintenance of government.

It would be impossible to keep in existence the ramified and expensive machinery of public authority which we call the state, or state government, organized " to establish justice, to maintain public order, and perpetuate liberty," unless the public revenues could be collected by some speedy, summary process.

We find the experience of all countries and governments the same on this subject.    It is understood that the practice has prevailed for centuries under the British government of enforcing taxes by a summary method.

That method, in its essential principle, was introduced
on this continent by the colonists, and prevailed until
the states became independent, and the great funda-
mental rights of person and private property were put
under the protection of constitutional limitations of
power.   The general feature of the plan of compulsory
collection has been to arm the collector with authority
to distrain and sell the property of the delinquent.   It
has very generally prevailed in the states from the date
of independence until now.   In perhaps all the state
constitutions are reservations from, or restrictions upon,
legislative power, to the effect that no person "shall be
deprived of life, liberty or property except by due
course of time."   "Private property shall not be taken
for public use without just compensation first made."
"The right of trial by jury shall remain inviolate."
These summary rules have been objected to as infring-
ing one or all these provisions.

It is quite manifest that the "inviolability of jury
trials" referred to, are those which were well known
and practiced at the time these constitutions were
adopted, and did not extend to all suits which affected
the person or property.   It was not designed to abro-
gate courts of equity or of admiralty, or those inferior
tribunals and *quasi* judicial proceedings which had never
used the jury.   The same is true of "due course of
law."   According to Mr. Webster, that is due course of
law when the citizen holds his "life, liberty, property
under the protection of general rules of society" which
have been promulgated beforehand.   Property may be
lost or gained by "due course of law" in an equity
court without a jury; so in the admiralty court; so
before a justice of the peace; so, too, if payment of
taxes is enforced by a summary method prescribed
beforehand by competent authority, the delinquent
owner may be said to lose his property by due course
of law.

The framers of the state constitutions found these summary tax proceedings in use at the time they devised these restrictions upon legislative power.   Most of them had come down from Magna Charta, and were consecrated in the common law.   The same modes of collection in all the essentials have been continued in the states since, and we are impelled, therefore, to the conclusion that it would not have been designed or intended to establish a constitutional provision which would abolish them, and that a proper assessment, approved by competent authority, and a sale on notice, by the designated officer, is such an exertion of judicial and executive authority, conducted according to "general rules," prescribed in that case, as does not conflict with these articles of the constitution.   Nor does it matter whether the tax is a charge, when assessed upon the thing, so that the property is liable, whether assessed to the true owner or not, so far as the question under consideration is concerned.   We have not intended to refer to adjudications on the subject which has been very extensively discussed in this court.   See Duncan v. Winston, 31 Miss. 136; Griffin v. Nixon, 38 ib. 433.

We are of opinion that these objections ought not to prevail, and that a sale of lands, made under the law in force at the date of this sale, is not obnoxious to the constitution.

A further cause assigned is, that the taxes, for which sale was made, were in aid of the rebellion.   Enough does not appear in the bill fairly to raise that point. If there be anything in it, the defendants may set it up by answer.   But the delinquency may have been on the assessment for ordinary state dues, the support of the civil establishment, or it may have been for this, including a sum in aid of the rebellion; what then?   Part of the tax would be good and part bad, and the good and bad might be separated.   In such circumstances, the case would be like a sale under two writs of *fieri facias*, one

of which was void and the other valid. See Cassell v. Backrack, 42 Miss. 65.

From these views, it follows that the demurrer ought to have been overruled. The decree will be reversed, the demurrer overruled, and cause remanded for plea or answer within fifty days from this date.