## McDUFFIE GREENE *v.* C. W. WILLIAMS.

1. TAX-DEED. *Prima facie evidence. Revenue act of 1877 construed.*

Sect. 10 of the revenue law of 1877 provided that the "conveyance, [to an individual] and the list of lands sold to the State, subject to the right of repurchase and conveyance as hereinafter provided, shall vest in the purchaser, or in the State, as the case may be, a perfect title to the land sold for taxes; and no such conveyance or list, as between the original parties or subsequent alienees, shall be invalidated, nor shall any defence be available against the title thus conveyed, in any court of this State, except by proof that the taxes for which said lands were sold had been paid or tendered to the proper officer before sale, or that the taxes were illegal in part, and that before sale the tax-payer tendered to the proper officer the amount of legal taxes due on said lands." Sect. 8 of Art. XII. of the State Constitution provides that "the courts shall apply the same liberal principles in favor of such titles [tax-titles] as in sale by execution." The effect of the statute above recited is to make such conveyance to an individual a perfect title, subject to be assailed by proof of the things in the statute specified as available defences, and of such other things as are made defences by the constitutional provision above quoted; and the result is that a conveyance made under that act is *prima facie* evidence of a perfect title.

2. TAX LAND. *Who entitled to redeem. Effect of redemption. Act of 1877.*

Sect. 12 of the revenue act of 1877 provided that the conveyance to an individual of land sold for taxes should remain in the chancery clerk's office for one year after the sale, and that within that period "the owner of such land, or any person interested, or any person for him, may repurchase the same," in the manner therein provided; and that the clerk should cancel such conveyance and deliver it to the party so repurchasing, and that the cancellation "shall operate to revest the title in the party to whom said land belonged." Where a person, believing himself to be the legal owner of land sold to an individual for the taxes due thereon, "repurchased" the same for himself, under the act above referred to, when in fact he was not the legal owner, he got no title by his "repurchase," but the title revested in "the party to whom said land belonged." And in such case the purchaser at the tax-sale was, by the "repurchase," divested of all of his right, title, or interest in the land.

3. SAME. *Money paid thereon. Lien. Act of 1878.*

Sect. 56 of the revenue act of 1876 was omitted from the revenue act of 1878, and thereby repealed, and the latter act contained no provision which gave a lien on land "repurchased" for the money expended in the "repurchase" and in paying subsequent taxes, where the party thus paying out his money fails to get a title to the land.

4. SAME. *Provision for redemption. Acts of 1877 and 1878.*

Sect. 12 of the revenue act of 1877, in relation to the redemption or "repurchase" of lands sold for taxes, was not repealed by the revenue act of 1878, but was reënacted in sect. 49 of the latter act.

5. CHANCERY PRACTICE. *Demurrer sustained. Dismissal of bill. Leave to amend.*

Where a demurrer to a bill in chancery has been sustained, it is not improper for the court to dismiss the bill without granting leave to the complainant to amend, if such leave be not applied for.

APPEAL from the Chancery Court of Clay County.

Hon. F. A. CRITZ, Chancellor.

At a sale for taxes in Chickasaw County in 1873, McDuffie Greene bought a tract of land lying in Clay County, having been by mistake assessed in the former county, and at the time and in the manner provided by the statute received a deed thereto from the tax-collector. On the first Monday of March, 1878, the same land was sold in Clay County for the taxes of 1877 due thereon, and was bought by R. H. Shotwell. The tax-collector's deed to Shotwell was filed in the chancery clerk's office, and remained there until the 19th of December, 1878, when Greene applied to the clerk to redeem, or, in the

language of the statute, "repurchase" the land. He paid the money necessary to redeem or "repurchase" the land, and the clerk cancelled the deed to Shotwell and delivered it to Greene. Shotwell refused to receive the redemption-money from the clerk, or to recognize Greene's right to redeem the land. On the 21st of April, 1880, Greene purchased from Shotwell his title to the land, and received a quitclaim deed thereof. Greene paid the taxes on the land for the years 1878 and 1879. On the 1st of January, 1880, Greene took possession of the land, and on the 4th of December, 1880, filed the bill in this cause against C. W. Williams, who owned the land at the time of the sale for taxes, for the purpose of removing from complainant's title the cloud cast upon it by Williams' claims; or, if that could not be done, then to subject the land to the payment of the amount expended by the complainant in redeeming or "repurchasing" and paying taxes on the land. The defendant demurred to the bill on several grounds, the first, second, and fourth of which were sustained. They were: (1) that the bill did not show the approval, by the Board of Supervisors, of the assessment of the land in controversy; (2) that it did not show that the assessment-roll upon which the land was assessed was ever put in the hands of the tax-collector; and (4) that the bill did not allege that the taxes for which the land was sold had not been paid or tendered by the defendant, or some one for him. From the decree on the demurrer the complainant appealed.

The "concluding sentence of sect. 43" of the revenue act of 1876 is in these words: "Which conveyance shall vest in the purchaser a perfect title to the land sold for taxes; and no such conveyance shall be invalidated, nor shall any defence be available against the validity thereof, in any court of this State, except by [the] proof that the taxes for which said land was sold had been paid before sale, and the tax-collector's conveyance to individuals, and list of lands sold to the State, shall be *prima facie* evidence that the assessment and sale were valid, and all proceedings of sale, and all duties imposed upon

the tax-collector preceding the sale, were done and performed according to law." Acts 1876, p. 151. Sect. 10 of the revenue law of 1877 (Acts, p. 6) is in these words: "That the concluding sentence of sect. 43 [of the revenue act of 1876] be so amended as to read as follows: 'Which conveyance, and the list of lands sold to the State, subject to the right of repurchase and conveyance, as hereinafter provided, shall vest in the purchaser, or in the State, as the case may be, a perfect title to the land sold for taxes; and no such conveyance or list, as between the original parties or subsequent alienees, shall be invalidated, nor shall any defence be available against the title thus conveyed, in any court of this State, except by proof that the taxes for which said lands were sold had been paid or tendered to the proper officer before sale, or that the taxes were illegal in part, and that before sale the tax-payer tendered to the proper officer the amount of legal taxes due on said lands.'" The chancellor held that the latter provision was a repeal of the former.

Sect. 8 of Art. XII. of the State Constitution provides that "the Legislature, at its first session, shall provide by law for the sale of all delinquent-tax lands. The courts shall apply the same liberal principles in favor of such titles (tax-titles) as in sales by execution."

*Barry & Beckett,* for the appellant.

The decision of the chancellor, sustaining the demurrer, was based on the ground that sect. 10 of the act of 1877 (p. 6) is in substitution of sect. 43 of the act of 1876, and that this sect. 10, being unconstitutional, does not have the effect to make a tax-deed *prima facie* evidence of title. To this position we answer that the effect of the section is to make the deed *prima facie* evidence. Even if the section (sect. 10) was partly unconstitutional, as held by the chancellor, it does not take away this effect from the deed. To make it constitutional it would be necessary to *enlarge,* and *not restrict,* the defences. The only point where it is contended to be unconstitutional is where it says that the tax-deed shall not "be invalidated except by

proof that the taxes were paid or tendered." The Constitution provides that the same liberal construction shall be given to tax-sales as to execution-sales. The way to construe this sect. 10, then, is that the tax-deed "shall not be invalidated by anything that would not invalidate an execution-sale." But some things may be made mandatory by statute that are not so at common law. Hence we think the correct construction is, that the deed "shall not be invalidated by anything except by proof that the taxes were paid or tendered;" or something absolutely essential to the validity of the sale — as, a valid assessment, levy, warrant, and sale. The law is, that no more of an unconstitutional law is void than is absolutely necessary to take away the objection. The Legislature possesses full control over the burden of proof. The effect of this sect. 10 is to make the deed *prima facie* evidence. *Griffin* v. *Dogan*, 48 Miss. 19 ; *Bell* v. *Coats*, 54 Miss. 538 ; *McCready* v. *Sexton*, 4 Am. Rep. 234, 236. This being true, the courts have no right to construe away this *prima facie* character of the deed.

But sect. 10 of the act of 1877 is an *amendment*, and not a *repeal*, of sect. 43 of the act of 1876. It does not conflict with sect. 10, or any part of it, to let the latter part of the concluding portion of sect. 43 remain, if that were necessary to make the deed *prima facie* evidence.

The general equity of the bill presents three questions, none of which has ever been adjudicated directly in this State under our present revenue system : First, Can a person, not in possession, holding a defective title to land, buy it at a tax-sale? Second, Can a person holding a title absolutely void, and not being in possession, redeem the land? Third, If such a person attempts to redeem, will his acts, being a stranger, affect the title of the tax-purchaser? The first question is answered in the affirmative by Judge Cooley, after an able argument. Cooley on Tax. 350, 351, and note. To the second question we answer that only a person having some interest in the land can redeem. The statute uses the words, " the owner, or any one

interested in the land." Acts 1877, p. 6, sect. 12. It is very clear that a stranger cannot redeem. Cooley on Tax. 367 ; Blackw. on Tax-Titles, marg. pp. 423, 424, 435, and note 2 b. A person out of possession, and claiming under a void deed, as was the case with Greene, has not a sufficient interest to entitle him to redeem. In answer to the third question, as to whether the attempted redemption by a person in Greene's attitude will affect the title of the purchaser at the tax-sale, we say that it clearly will not. Cooley on Tax. 367 ; Blackw. on Tax-Titles, 423, 424. Nor can the cancellation by the clerk of the deed, upon such attempted redemption, affect the title of such purchaser. Blackw. on Tax-Titles, 435, note 2 b ; *Stebbins* v. *Guthrie*, 4 Kan. 353.

*W. F. Tucker*, for the appellee.

Under our decisions, until a recent day, it was held that the tax-collector exercised a naked statutory power, and the law authorizing the sale must be strictly complied with or the deed will be void. Decisions placing the *onus probandi* upon the defendant rest alone upon sect. 1700 of the Code of 1871 and sect. 43 of the Acts of 1876.

By reference to sect. 10, page 6, of the Acts of 1877, it will be seen that no such rule of evidence is there reënacted. The words "*prima facie*" nowhere appear. It goes further, and repeals the concluding sentence of sect. 43 of the act of 1876, which contains the rule referred to. Substantially, the act of 1877 is the revenue act of 1850, construed in *Griffin* v. *Mixon*, 38 Miss. 424. Under the act of 1877 we contend that the old rule of construction again comes into force, and every act required by the law to be done must be shown affirmatively to have been performed by the tax-collector or the deed will be void.

Here, however, we are met by the eighth section of the twelfth article of the Constitution, which, it is said, inaugurates a permanent rule, which did not exist under the older decisions. With all due respect to *Virden* v. *Bowers*, 55 Miss. 1, and the learned court which announced the law in that case, is this

true? The first clause of said sect. 8 refers alone to the first session of the Legislature following the Constitutional Convention. At the first session the Legislature is to provide for the sale of all delinquent-tax lands. The courts are to apply the same liberal principles in favor of such titles as in sale by execution. In favor of what titles? The titles under the sales of delinquent-tax lands, as provided by the first Legislature meeting after the Constitutional Convention.

Could Greene redeem the land? His title may have been defective,—doubtless it was,—but he certainly was not a stranger. He had an interest, and such an interest as would entitle him to redeem. It is not alone the party in whom the legal title vests who is authorized to redeem under such a statute as ours, authorizing parties in interest to redeem. Title is not a requisite. Even a purchaser at sheriff's sale of the right of one in possession may redeem, though he show no title in the occupant. Cooley on Tax. 366; Blackw. on Tax-Titles, 423-445.

Greene did redeem the land, and when the clerk cancelled Shotwell's tax-deed, he (Shotwell) was divested of all right, title, and interest acquired in the land under the tax-sale. Cooley on Tax. 368; Blackw. on Tax-Titles, 418. When Greene redeemed, he destroyed all claim that Shotwell had; and when he bought of Shotwell, the latter had nothing to sell.

*W. F. Tucker* also argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

We do not agree with the chancellor in his view that sect. 10 of "An act in relation to public revenue, and for other purposes," approved February 1, 1877 (Acts, p. 2), had the effect to throw upon the holder of a conveyance of land sold for taxes by the tax-collector the burden of averring in pleading, and maintaining by evidence, the concurrence of all those things which are conditions precedent to the proper exercise of the power to sell. That section declares that such conveyance shall vest a perfect title, which shall not be invalidated or defended against except by proof of certain things speci-

fied. This is, in effect, to say the conveyance shall vest a perfect title, subject to be assailed by proof; in other words, the conveyance shall be *prima facie* evidence of a perfect title. It is true that, by virtue of the Constitution, the conveyance might be assailed by proof of other things than are specified in said section, but that does not take away the *prima facie* character of the conveyance. The Constitution adds to the things specified by sect. 10 of the act under review, proof of which will overthrow such conveyance, whatever may be a constitutional prerequisite to a valid sale for taxes; and it results from the act and the Constitution that such conveyance may be successfully assailed by proof of what is made, by the Constitution or law, a ground for such assailment; but until proof of some such thing, the conveyance by the tax-collector is to be held to vest a perfect title in the purchaser.

To say that a conveyance shall stand until it is overthrown, is to invest it with the character of *prima facie* evidence. It is not necessary to say, in express terms, that a conveyance shall be *prima facie* evidence, in order to make it such. *Griffin* v. *Dogan*, 48 Miss. 11; *Bell* v. *Gordon*, 55 Miss. 46.

By virtue of sect. 12 of the above-cited act, the cancellation, by the clerk, of the conveyance made by the tax-collector to Shotwell, on payment of the money by appellant to effect such cancellation, operated " to revest the title in the party to whom said lands belonged," and no arrangement afterwards made between appellant and Shotwell could alter the legal effect of the entry to cancel the conveyance. The law permitted " the owner of such lands, or any person interested, or any person for him," to " repurchase the same." Appellant did " repurchase " the land. True, he did it for himself, as he thought and intended; but when the conveyance was " cancelled," the title revested in " the party to whom said lands belonged." Appellant applied to " repurchase " the land. It was not for the clerk to deny his right to do so, since he might do it for himself or the owner. The grantee in the conveyance had no right to object, as he got his money

with interest.   The object of the law was accomplished by the return to the purchaser at tax-sale of his money and interest, and to the owner, of his title to the land.

The appellant is not entitled to charge the land with the amount paid to " repurchase " it, or with the taxes he has since paid on it, or with any other sum, because there is no law giving the right to charge the land for such repayment.

It follows from these views that the demurrer was properly sustained.

It is assigned as error that no leave was given to amend the bill.  It does not appear that leave to amend the bill was asked.   A dismissal of the bill ordinarily follows a decree sustaining a demurrer to it.  If leave to amend is desired, it must be applied for, and it is not erroneous to dismiss the bill if leave to amend it is not applied for.

Decree affirmed.

The counsel for the appellant suggested to the court that there was error in the foregoing opinion in two particulars : (1) in treating sect. 12 of the revenue act of 1877 as in operation at the time Greene made his attempted " repurchase " of the land, when in fact it had been repealed by the revenue act of March 5, 1878 ; and ( 2 ) in treating Greene as a mere volunteer in paying out his money for the " repurchase " of the land and for taxes thereon, and therefore not entitled to have the same refunded to him, and yet holding that he was entitled to redeem under the statute.   In response to these suggestions the court made the following announcement : —

*Per Curiam.* — The twelfth section of the revenue act of 1877 was not repealed, but was reënacted and continued in force, by the act on the same subject approved March 5, 1878. See Acts 1878, p. 50, sect. 49.   Sect. 50 of that act seems to have misled counsel, who argue that because express provision is made by it for the redemption or purchase of lands before sold to the State for taxes, and no express pro-

vision was made for land before sold to individuals, there was a repeal of the provision by sect. 12 of the act of 1877 on that subject. Not so. The history of the legislation is this : The revenue act approved April 15, 1876, by sect. 48, made provision for the disposal of lands purchased by the State for taxes, but left it very doubtful whether lands sold to individuals were subject to redemption ; and, by sect. 49, it was declared that " all lands heretofore sold to the State for taxes may be redeemed or purchased in the manner hereinbefore provided," etc. By sect. 12 of the amendatory act of 1877, the concluding sentence of sect. 48 of the act of 1876 was so amended as to specifically provide for and regulate the " purchase " and " reconveyance " of land bought by individuals at sales for taxes. The act of 1878 embodies the act of 1876 as amended in 1877, and copies substantially, and almost verbally, sect. 12 of the act of 1877 ; and sect. 50 of the act of 1878 reënacts sect. 49 of the act of 1876, so as to apply the provision for disposal by the State of all lands held by it for taxes under former sales. The propriety of the express provision for the disposition of lands held by the State, and the omission of such provision for the redemption of lands sold to individuals, other than was made by the reënactment of sect. 12 of the act of 1877, is manifest. The State held large quantities of land thus acquired, and it was proper to make provision for its disposition. Therefore the act was made to apply to these lands. All that was necessary or proper as to lands held by individuals was to reënact and continue without change the provision for the cancellation of conveyances to individuals as contained in the act of 1877, and that was done.

It is a mistake to suppose that we deny to appellant the right to reimbursement for his outlay of money on the ground that he was a mere " volunteer " in effecting the cancellation of the conveyance to Shotwell. It is true that in his bill he avers that he was a mere intruder and " volunteer," without right to " repurchase ;" but our view is, that as he claimed the right to intervene and procure the cancellation of the tax-col-

lector's conveyance to Shotwell, and did it, it had its legal operation and effect, and, therefore, that there was nothing left for Shotwell to convey to appellant, and he got nothing by Shotwell's conveyance. The ground on which we felt compelled to deny reimbursement to appellant is, that sect. 56 of the revenue act of 1876, by virtue of which a right to reimbursement out of the land existed, was omitted from the act of 1878, and was thereby repealed ; and when appellant procured the conveyance to Shotwell to be " cancelled," there was no statute giving him any right to reimbursement.

We decline to make any change in the judgment heretofore entered in this case.