H. G. D. Brown et al. *v.* Board of Levee Commissioners.

1. "Due Course of Law" — Due Process of Law — Law of the Land.— These terms do not mean the general body of the law, common and statute, as it was at the time the constitution took effect. For that would deny the right to the legislature to amend or repeal the law. They refer to certain fundamental rights, which that system of jurisprudence of which ours is a derivative has always recognized.

2. Practice — Jurisdiction. — It is essential to the validity of a judgment or decree that the court should have jurisdiction.

3. Same — Judgment Suits in Rem. — The "thing" must be subject to the cognizance of the court and amenable to its decree.

4. Judgment Suits in Personam. — The right to adjudicate, so as to conclude the defendant, is conferred by notice actual or constructive, according to a prescribed formula.

5. Power of the Legislature over Process. — The provision of the bill of rights "that no person shall be deprived of life, liberty or property, except by due process of law," inhibits the legislature from dispensing with personal service, where it is practicable, and has been usual under the general law. It does not take from the legislature power to amend the law and change the formula of remedies; provided, the fundamental right of personal notice, actual or constructive, in personal suits, is not taken away.

6. Same — Case in Judgment. — The statute authorizing the suit, prescribing the mode of procedure, and the decree of sale, are condemned as unconstitutional, because it dispenses with personal notice, when the defendants, or many of them, were residents of the county and state and amenable to such process; because the legislature attempted to change a suit, which, according to the "law of the land," was *personal* into a proceeding *in rem* so as to dispense with personal notice; because the defendants had or may have had diverse and independent interests in the land, conflicting with each other and the complainants, and were so numerous that it would be impracticable to unite them in one suit, and adjudicate the numerous collateral controversies that might arise; because the statute and suits under it are unusual, extraordinary and without precedent, legislative or judicial, in the history of the state.

Appeal from the Chancery Court of Bolivar County. Hon. E. Stafford, Chancellor.

The record shows that on the 22d of October, 1872, the board of levee commissioners of the counties of Bolivar, Washington and Issaquena filed their bill in chancery court of Bolivar county, against " All persons having or claiming any interest, either legal or equitable, in and to the lands herein described," as defendants, without naming any individual.

The bill alleges that said board was incorporated by an act passed November 27, 1865, for the purpose of rebuilding old levees or making new ones in said counties, and that by said act a uniform tax of ten cents per acre was levied and assessed upon all the lands in said counties (with certain exceptions), payable on or before the 1st of March in every year, from 1867 to 1879 inclusive, which tax was made a lien on said lands, and that in case of failure to pay the same, it was provided that the sheriff should, on the first Monday of April of each year, sell the land in default, at the court house, for cash, and if the amount due on any tract should not be bid, then the same should be struck off to the levee treasurer of the said board, to whom and his successors in office, a deed should be executed; the sales to be continued from day to day until completed.

That *in accordance with said act,* from year to year, certain lands in the county of Bolivar have been so struck off and *sold* to said treasurer of said board ; that a large portion thereof are still held by said treasurer, as *part of the assets of complainants;* and that the tax due said board on said land, as well as state, county and liquidating levee tax, at the date of sale, and which have accrued since, are still due and unpaid. Complainants file lists of said lands, showing amount of tax due *up to the 1st day January term,* 1873, *of this court,* and the gross amount at said last named date, as Exhibits A, B, C, D, E and F.

Complainants file this bill under an act entitled " An act for relief of the board of levee commissioners of the counties of Bolivar, Washington and Issaquena, and for other purposes," approved April 5, 1872, and pray a decree for sale of said lands,

or such parts thereof against the sale of which no good cause is shown, for the amount of taxes stated to be due thereon, and for general relief.

The exhibits embrace a large proportion of all the land in the county, but only so much is copied as bears on this case.

Exhibit C contains the land claimed by appellant, H. G. D. Brown, to wit: All of section 13, and the S. W. 1-4 and the W. 1-2, and S. E. 1-4 of S. E. 1-4 of section 14, township 24, range 6 W., containing 916 acres, and states that the same is claimed by said board as struck off to their treasurer at the tax sale in 1869, for the levee tax of ten cents per acre for the year 1868, and it gives a statement of the levee, state, county, and all other taxes due on said land for the years 1868-9-70-71 and 1872, making an aggregate of $943.12.

No affidavit was made, nor any order of publication, but the record shows that a notice was published in the "*Pilot*," a newspaper published in the city of Jackson, twelve times, commencing October 26, 1872, and ending 18th January, 1873. This notice is entitled in a cause of

"*Board of Levee Commissioners, etc.*, v. *All persons, etc.*—Boliver County Chancery Court, October Term, 1872."

This notice states the filing of the bill or "petition" praying for the sale of the land contained in said lists for the taxes stated, and requires all persons having or claiming any interest to appear at the next succeeding term, and show cause why the prayer of the petition should not be granted, or to redeem said lands.

The lists were appended to this notice.

At January term 1873, on the 24th day of the month, without any *pro confesso*, without proof, and without a reference, to ascertain the amount due, a final decree was made, reciting the proof of publication, and that no cause had been shown why the lands should not be sold for the amount of taxes *stated*; and much land in the county was ordered to be sold by a commissioner on the first day of the next regular term of the court.

From this decree H. G. D. Brown, who claims a portion of the land, brings this appeal.

The following errors are assigned :

1. The whole proceeding was null and void so far as appellant is concerned, because he was not made a party to the proceeding, and had no notice thereof, nor opportunity given to be heard in his defense.

2. There was no order of court made requiring the appearance of the defendants, or directing any publication to be made against them.

3. No decree *pro confesso* was taken or entered against the defendants, and the decree was given without any proof whatever, and without any reference to a commissioner or master to ascertain the amount due.

4. The bill claims, and the decree is given for taxes not due when the bill was filed, to wit: for all taxes due on and up to the first day of the January term, 1873, of the court, the bill having been filed in October, 1872.

5. The bill shows that the land had once been sold in pursuance of law for the taxes sought to be recovered in this suit, and purchased by said board of levee commissioners, whereby all lien or claim for said taxes had been extinguished, and no suit could be maintained to subject the same land to a second sale for the same tax.

6. The decree does not direct the land to be sold in tracts not exceeding one hundred and sixty acres.

*H. T. Ellett and Harris & George,* for appellants, contended :

1. That a judgment or decree rendered without notice is void. Campbell v. Brown, 6 How., 114; *ex parte* Heyfron, 7 How., 127; Gwin v. McCarroll, 1 S. & M., 351, 358; Jack v. Thompson, 41 Miss., 49. The constitution of the United States and this state provide that "no person shall be deprived   *   *   *   of property, except by *due process of law.*" This expression, "due course or process of law," imports a trial,

according to the course of the common law, after due notice to the party to be affected and a fair opportunity given to make defense.  Sedg. Stat and Const. Law, 537, 610, 4 Hill (N. Y.), 146; 1 Cowen, 740; 3 Hen. & Mum., 336, 16 Penn., 256; Murray v. Hoboken Co., 18 How., 276; 1 Kent's Com., 620; 3 Story on Cons., 661, § 1783; 2 Smith's Lead. Cases, 683.  The defendant must have had due notice to appear, and be subject to the jurisdiction of the court.  Bissell v. Briggs, 9 Mass., 462; Buchanan v. Rucker, 9 East, 192.  The act of April 5, 1872, p. 217, under which the present proceeding was had, is in flagrant violation of these constitutional restrictions.  It not only authorizes proceedings against men without making them parties, but absolutely prohibits any person, though a citizen of the state and resident in the county, being made a party by *name, designation or description*, thus rendering it impossible for any man to find out whether he is interested in the proceeding.  The legislature may, to a certain extent, substitute *constructive notice*, instead of actual. Jack v. Thompson, 41 Miss., 50; Zecharie v. Bowers, 1 S. & M., 584; 3 S. & M., 641; 6 S. & M., 375; 28 Miss., 354; Foster v. Simmons, 40 Miss., 585.  A judgment at law, taken by default on a constructive service of process, the defendant will be entitled to relief in equity by a new trial at law, if he has a legal defense to even a part of the demand.  Jones v. Commercial Bank, 5 How., 43, 539; Lapece v. Hughes, 24 Miss., 69; So. Ex. Co. v. Craft, 43 Miss., 508.  And a final decree in chancery will be set aside under the same circumstances.  McGowan v. James 12 S. & M., 445.  A judgment, against a party not named in any part of the record, is void.  It cannot be presumed that *one who does not appear* to have been a party, has had his day in court.  Freeman on Judgments, p. 115, § 141; Herman on Estoppel, p. 115, §§ 53, 111–146; Cooley Cons. Lim., 404; Nations v. Johnson, 24 How., 202.  A personal judgment rendered on publication alone is not evidence of personal liability outside of the state where rendered.  Board of Public Works v. Columbia College

(S. C. of U. S.) Central L. J., Feb. 5, 1874 ; D'Arcy v. Ketchum, 11 How., 165.; Moulin v. Ins. Company, 4 Zab., 222.

2. The decree of the chancery court is void, because the statute requires notice to be published in the ———, a public newspaper printed in the city of Jackson.   It was intended to designate the particular paper, and the act fails to do so.   A substantial and necessary part of the act is wanting, and it cannot be supplied by intendment or proof.   It is a clear case of patent ambiguity and cannot be helped by averment.   2 Conn., 537 ; 11 Conn., 132 ; 1 Starkie Ev., 589 ; 1 Greenl. Ev., § 297.

3. The proceeding is not a proceeding *in rem.*   Jurisdiction of cases in *rem* depends on the *seizure* and *custody* of the *res*, which seizure and custody are held to be constructive notice to all parties interested.   Stewart v. Board of Police, 25 Miss., 482 ; N. O., J. and G. N. R. R. v. Hemphill, 35 Miss., 24 ; Mankin v. Chandler, 2 Brocken, 127 ; Cooper v. Reynolds, 10 Wall., 317 ; Ridley v. Ridley, 24 Miss., 648.

*W. L. Nugent,* for appellee, filed an elaborate argument, in which, after explaining the reasons, policy and necessity of the law complained of, he made the following points :

1. To justify the prosecution of the appeal, the appellant must have been prejudiced by the decree, and he could only be prejudiced if he were the owner of, or interested in some of the lands decreed to be sold.   The proceedings being by publication against "all parties interested," generally, to justify this court in entertaining the appeal, there must appear in the record a *prima facie* showing of ownership or interest.   The mere suggestion by counsel, in a petition for appeal, not signed or sworn to by the appellant, shows nothing, for if this were not the case, any person, whether owner or not, could have the proceedings reviewed.   In Tate v. Carnes, MSS. opinion, this court held that a merely nominal defendant in a chancery proceeding, who was not shown to be prejudiced by the record, could not prosecute an appeal.   Hamilton v. Moore, 32 Miss., 205 ; Hewett v. Cobb, 40 Miss., 61 ; Miller v. Mayfield, 37 Miss., 688.

2. The question is, can the legislature provide for collecting taxes which operate by law as a specific charge and lien upon lands, in a summary mode and by publication alone. It is a maxim of the law and a rule laid down in all the text books, that in all judicial or *quasi* judicial proceedings affecting the right of the citizen, he shall have *notice* and *an opportunity of a hearing* before the rendition of any judgment, order or decree against him ; and that when a statute authorizes a judicial proceeding and is *silent as to notice*, the adjudication will be void unless notice is given to the party in interest. When, however, the proceedings are *in rem* instead of *in personam*, the court acquires jurisdiction by seizing the thing without specially noticing the interested parties. In cases within this class, notice to all concerned, *as a rule*, is required to be given by publication. The reason for a different rule at common law is, that suits proceed against the *persons* whose interests are sought to be affected. Jack v. Thompson, 41 Miss., 49. And unless this personal service be given, there can be no judgment obligating the person. Black v. Black, 4 Bradf. Sur. Rep., 205. The right of the legislature to prescribe notice by publication, and to give it effect as process, rests upon the *necessity* of the case, and has been long recognized and acted upon. In the matter of Empire City Bank, 18 N. Y., 200, Denio, J., said : "When the legislature has provided a kind of notice by which it is reasonably probable that the party proceeded against will be apprized of what is going on against him, and an opportunity is afforded him to defend, I am of opinion that the courts have not the power to pronounce the proceedings illegal." See also Rockwell v. Nearing, 35 N. Y., 314; Nations v. Johnson, 24 How., U. S , 195; Beard v. Beard, 21 Ind., 321 ; Mason v. Messenger, 17 Iowa, 261. While it is true that in such cases no personal judgment can be rendered, still, the publication of notice will enable the court to give effect to the proceeding so far as it is one *in rem ;* and that is the only thing attempted in the case. Cooley Const. Lim., 404. The right of the legislature to provide notice by pub-

lication, in certain cases, has been universally conceded when the necessity of the case authorizes it. Todd v. Kerr, 42 Barb., 317 ; Maguire v. Maguire, 7 Dana, 181; Thompson v. State, 28 Ala., 12 ; Harrison v. Harrison, 19 Ala., 499; Mansfield v. McIntyre, 10 Ohio, 28; Hubbell v. Hubbell, 3 Wis., 662; Griffith v. Vestner, 5 How., 736; Foster v. Simmons, 40 Miss., 585; Ingersoll v. Ingersoll, 42 Miss., 155. In Griffith v. Verner, Sharkey, C. J., said : "It is altogether competent for the law to prescribe any mode of bringing parties into court. It may be done by process direct or by notice. Publication is constructive notice to all persons interested, and when such mode of giving notice is prescribed by law, all parties are presumed to be duly notified." In fact, it has been decided that "when a statute provides for the taking of a certain security, and authorizes judgment to be rendered upon it on motion, without process, the party entering into the security must be understood to assent to the condition, and to waive process and consent to judgment." Lewis v. Garrett's adm'r, 5 How., 434; People v. Van Epps, 4 Wend., 390; Pratt v. Donovan, 10 Wis., 378; Murray v. Hoboken Land Co., 18 How., 272; Philadelphia v. Commonwealth, 52 Penn. St., 451. How much more strongly would the rule apply in a proceeding to utilize for revenue purposes, large bodies of lands which had been sold for arrearages of taxes, and the titles to which had passed absolutely by *due course of law* to the state or the levee boards.

3. "It has never been questioned," says Redfield, C. J., in Thorpe v. Rutland and Burlington Railroad Co., 27 Vermont, 142, "that the American legislatures have the same unlimited power in regard to legislation which resides in the British parliament, except where they are restrained by written constitutions." As a general rule, every state has complete control over the remedies which it offers to suitors in its courts. It may give a new and additional remedy for a right already in existence, * * * and any rule or regulation in regard to the remedy, which does not, under pretense of modifying or regulating it, take away or im-

pair the right itself, cannot be regarded as beyond the province of the legislature. Cooley Cons. Lim., 361, 362. The act in question does not relate to any ordinary suit in court, and is out of the operation of ordinary adjudication. If the view urged by counsel for the appellant be adopted, the result will be that no revenue can ever be collected except by a direct proceeding and upon service of process, when the debtor resides in the state; and it would be difficult to sustain even a sale under execution predicated of a notice by publication. The law now controverted was passed to remedy a great public inconvenience, and to solve the conflict of claims growing out of sundry tax sales to different claimants, by treating all arrearages of taxes according to the express terms of the statute, as liens upon the lands, and by selling them, after opportunity offered the original owner to redeem — an opportunity before then lost by efflux of time. To accomplish this necessary end, a fair and summary remedy was provided, giving ample opportunity for defense to all parties in interest, and requiring a list of the *lands proceeded against,* and the amount of taxes claimed to be published for twelve consecutive weeks to the world. I cannot discover that any provision of the constitution was invaded; and testing this case by the rule that the party interested shall have notice and an opportunity to defend, the record shows that the appellant appeared in ample time to avail himself of the remedy prescribed by the law itself. Certainly he was notified in fact as well as by construction of law. The remedy provided by the legislature was exactly adapted to the exigency, and there is nothing limiting the power of the legislature in this respect to be found in the constitution.

SIMRALL, J., delivered the opinion of the court:

These were suits in chancery brought by the board of levee commissioners, under the provisions of an act of the legislature, passed the —— day of ———, 1872. In each case the complain-

ant makes substantially the same allegations. In 1865, the complainant was created a body corporate " for the purpose of rebuilding, strengthening or elevating the old levees in the counties of Bolivar, Washington and Essaquena, and by the terms of the act an annual tax was imposed upon all the lands in those counties until 1879, for that object, which was a lien upon the land. To enforce collection, the collector was authorized on the second Monday in April, to sell the lands of delinquents, for cash, and on the failure of other persons to bid the amount due, then the lands should be struck off to the treasurer of the board. That from year to year, a large number of sales were made to the treasurer; many of which lands are still held as the property of the board.

Filed as exhibit to the bills is a schedule of lands bought in by the treasurer for the taxes of 1869, with a statement of the levee, state and county and all other taxes for the years 1869, 1870, 1871, 1872.

The prayer is that the court will decree a sale of the lands "or such parts and parcels thereof against the sale of which no good cause is shown, for the amount of taxes stated to be due thereon," and if mistaken in this, for other, further and general relief, etc.

The suits were brought under a special statute, which it becomes necessary to analyze, before proceeding to consider the questions of law, presented for solution.

The preamble discloses that the lands claimed to be held and owned by the levee commissioners are beclouded by claims thereto by the state, and the liquidating board of levee commissioners, and as it is important that the titles held by the board of levee commissioners should be quieted, so that the lands may be made available in the payments of the debts contracted by the board for levee purposes. Therefore, as we might well suppose, the enactments which follow, would point out a mode by which these lands should be disincumbered, and relieved of the "claims" named in the preamble, to wit., the "state" and the "liquidating board." But the first section which gives the mode of procedure discovers a much larger scope.

It is thereby made the duty of the board of levee commissioners to file in the chancery court * * * their petition "against all persons claiming or having any interest either legal or equitable in and to said lands," praying that said lands be sold for the payment of all taxes in arrears thereon," etc. "Nor shall the state, or any person or corporation interested therein, be made defendants by name, designation or description."

The notice of the suit is prescribed in the second section. "The board of levee commissioners shall cause notice to be published in the ———, a public newspaper published at Jackson," directed to "all parties or persons having any interest either legal or equitable in and to said lands, to appear * * * and show cause why said lands should not be sold for taxes, in arrear * * or to redeem the same." The notice shall be accompanied by a list of the lands filed with the petition.

The enactment extends the remedy beyond the recital of the preamble, so as to make it reach all persons, natural or artificial, who have claim to or "interest in the lands."

The sale shall be made "for the taxes in arrear and unpaid," and not only the "state," and "liquidating board," but all persons or corporations interested in the lands are to be notified by newspaper publication to come in and show cause, etc.

It is insisted by the plaintiffs in error, that the decrees of sale founded upon the petitions and exhibits and notice, are invalid, because it is an effort to deprive them of property "without due process of law," and that the remedy pursued is not according to "due course of law." Sec. 2, art. 1 Const. of Miss., and sec. 28. The original of the grand principle embraced in the second section of 1st art. of the constitution is in Magna Charta, and was designed primarily to shield persons and their property from the invasions of the prerogative and arbitrary power of the king. The Great Charter, and, subsequently, the American Constitution, declare the fundamental principle of the absolute inviolability of life, liberty and property against the encroachments of arbitrary

power, and forbid the deprivation of either, by any form of power or authority, except it be, as in Magna Charta," *per legale judicium parium suorum, rel per legem terræ,*" or, as written in some of the constitutions, "by the law of the land, or the judgment of his peers;" and in others, "due process of law," and "due course of law," and "according to the law of the land." See a collection of the various state constitutions in Sedgwick on Stat. & Const. Law, 535–7. Whichever form of expression has been used, they all have the same general interpretation.

Mr. Webster gave an exposition of the meaning of the words, law of the land and due process of law, in his argument in the Dartmouth College case, reported in 4 Wheat., which has received the sanction of the courts. "By the law of the land, is most clearly intended the general law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. It means that every citizen shall hold his life, liberty and property under the protection of general rules which govern society." Taylor v. Porter, 4 Hill (N. Y.), 140; Griffin v. Dogan & Martin, 48 Miss., 21.

These terms, "law of the land," "due course of law," "due process of law," do not mean the general body of law, "common and statute," as it was at the time the constitution took effect. For that would seem to deny to the legislature the power to alter, change or amend the law. Yet we know that it is every day's practice for the law-making department of the government to repeal old laws, enact new, and change remedies.

The principle does not demand that the laws existing at any point of time shall be irrepealable, or that any forms of remedies shall necessarily continue.

It refers to certain fundamental rights which that system of jurisprudence, of which ours is a derivative, has always recognized. If any of these are disregarded, in the proceedings by which a person is condemned to the loss of life, liberty or property, then the deprivation has not been by "due course of law."

Some subjects are cognizable in one court, and others in an-other. What would be "due process of law" in one proceeding, might not be in another. The nature of the suit or action, and how the judgment will operate, and upon what, must be looked at in determining whether the proceeding has been conducted ac-cording to due process of law. In our system, there have existed remedies, which affect the person, suits *inter partes.* Remedies which are of a mixed nature, touching both the person, and a " thing," and remedies which are purely and simply "*in rem*," which affect, or may affect, the subject matter or thing only. These sev-eral remedies are not necessarily peculiar to particular courts, as those which pursue the common law; those which are of equity jurisdiction, or admiralty courts. It is fundamental to all judicial proceedings, no matter what the constitution of the court, and its forms of administering justice.

It is essential to the validity of the judgment of every court, that it should have jurisdiction over the subject. And in addition, where the action or suit is personal, over the defendant to be charged thereby.

In personal suits, that which gives the court cognizance over the defendant, is notice of the suit in some prescribed form.

In proceedings *in rem*, the "thing" or "matter" affected by the decree, must be subject to the dominion of the court; its *situs* must be such as that the judgment may be operative upon it. In the strict technical suit, the thing, in some appointed mode, is placed in the power of the court, generally by a seizure and pos-session by an officer of the court. As a vessel captured from an enemy on the high seas, or for violating a blockade, or seized for violating the navigation and impost laws; or liquor or tobacco taken into possession by the marshal, because held or offered for sale in contravention of the internal revenue laws. In these and such like cases, the judicial process goes against the "thing," which is in the custody of the court, through its officer, and which is technically the defendant. Mankin v. Chandler & Co., 2 Brocken

Rep., 127–8; Freeman on Judgments, § 611. In these cases parties interested in the "thing," were warned in by proclamation and published notice, to prefer their claims.

There are other suits of the nature of proceedings *in rem*, such as the probate of wills, grant of administration, condemnation of private lands for public highways, etc. Freeman on Judgments, from § 606 to § 614; 2 Starkie Evi., 22 to 230, and Stewart v. Board Police Hinds County, 25 Miss., 480, 481-2-3. In these instances, the judgment operates upon the *situs* and relations of the subject matter, and by force of the judgment, impresses a new relation, as in the last case cited. The relation of the land to the private owner is changed, and a new relation, that of dedication to the public use is impressed upon it. 2 Smith's Lead Cases, 660.

Persons are not made parties by name to these suits, and when they come into the litigation it is as intervenors.

Nor is it essential to the jurisdiction that the owner or any person having interest in the "thing" to be affected by the judgment, should have notice, other than such as is implied in the seizure itself. Every person is concluded by the judgment; because it is open to the world to intervene and assert rights. The judgment binds everybody — there is no such thing as personal parties, who with their privies are estopped and concluded, and nobody else, as in personal suits. Stewart v. Board Police, 25 Miss., 480; N. O., J. & G. N. R. R. Co. v. Hemphill, 35 Miss., 23.

Although the legislature may, at its pleasure, provide new remedies, the power is nevertheless subject to the condition that it cannot, by a new formula, overthrow ancient and fundamental rights which have been respected and observed in judicial procedures. It is fundamental that to be bound and concluded by a judgment in personal suits, the defendants must have the notice prescribed, actual or constructive, and to give validity and conclusive effect to a judgment in proceeding *in* "*rem*," the thing must be subject to the control of the court and within its territorial jurisdiction. It would be a violation of constitutional injunc-

tion, if the legislature should dispense with notice in personal actions or suits, or with territorial as well as judicial dominion over the "thing," in suits *in rem.*

Jack v. Thompson, 41 Miss. R., 50, is an example of the former class. The legislature had conferred authority on the probate courts to bind out a certain class of persons, as apprentices, but made no provision for notice to them. The court declared that "the principle is universal, that no order or decree is valid or binding upon a party who has had no notice of such a proceeding against him." And further, "that it is not in the power of the legislature, under the constitution, to dispense with notice, actual or constructive."

The cases cited from 25 and 31 Miss. R., afford examples of the latter class. Whilst "processes" are in the power of the legislature, it must respect that ancient and fundamental right which has always belonged to parties sought to be charged in their persons and property, that they shall have notice of the suit. Courts of common law and equity cognizance have always exacted personal notice, if practicable; that is, if the defendant was commorant within the territorial jurisdiction, and if he could be found. But in order to prevent a failure of justice "*ex necesitate,*" if personal notice could not be given, an inferior mode, such as in the wisdom of the legislature might be thought likely to impart actual notice, has been allowed — such as leaving a copy of the summons with a member of defendant's family, or affixing it to the door of his domicil, and in certain cases by publication in a newspaper.

The several common law modes of compelling the appearance of the defendant in court were : 1. The summons.  2. The writ of distingras, or distress infinite.  3. The *capias ad respondendum,* and finally, proclamation and outlawry. The obdurate defendant was subject to a distress of his goods, and the issues of his land, until exhausted, and then to the arrest of his person. 2 Black. Com., 3 Book, pp. 279, 280.

The relaxation which has been allowed, and the extent of it, has to substitute an inferior mode of giving notice which would be apt to accomplish that result, and that in cases of necessity, to avoid a failure of justice. It is just that property in this state should be held liable to a creditor, notwithstanding the absence or nonresidence of the debtor. It would not violate the due process of law to seize that property, by judicial process, and hold it amenable, to the absconding or nonresident debtor; to that extent it is a proceeding "*in rem*," but in this case, the statute has always required some mode of publication most apt to give notice to the debtor. But if the debtor is not served or does not appear and personally submit to the jurisdiction of the court, a personal judgment would be void. Holman v. Fisher, executor, 49 Miss. Rep. To illustrate, the principle upon which constructive notice rests and the extent of it, reference is made to matter of City Bank, 18 N. Y., 215; Happy v. Mosher et al., 48 N. Y., 317; Harris v. Hardeman, 14 How. S. C., 339; Nations v. Johnson, 24 How. S. C., 202; Voorhies v. Bank of U. S., 10 Peters, 449; Mason v. Messinger & May, 17 Iowa, 266; Beard v. Beard, 21 Ind., 322.

Are these judicial proceedings obnoxious to the objection that proper notice has not been given and in other features are they unusual and extraordinary ?

The bill seeks a sale of all the lands held by the board of levee commissioners, and bought in for taxes; as well as for the taxes accrued since 1869. If the object were simply to make a sale, the board had ample power to do that, under the act of November 27, 1865, sec. 15, pp. 60, 61, pamphlet. Nor was the suit necessary to cut off the equity of redemption, for that had expired before the suit was brought, as to all persons, except those under disability. Nor again was the suit brought to confirm and establish the title of the board of levee commissioners, to the lands bought at the tax sales. * * * The policy of the statute of 1872 seems to be, that, inasmuch as the board of levee commissiones may have a doubtful title to the lands conflicting with purchasers, made at

sales for state and county taxes, and also the liquidating commissioners, and also with the claims of original owners. Therefore one bill shall be filed covering all the land in the county, by means whereof a judicial sale shall be had unless opposing claimants shall come in and pay what taxes were due, when the lands were bought by the board, and subsequent taxes. And the legal effect of such decree and sale shall be to conclude all claimants and titles and rest a complete right in fee in the purchasers. In such a suit a vast number of parties are involved, whose claims originate from several sources, each independent in right, and have nothing in common with each other.

Suppose that the board of levee commissioners claims title to 500 parcels of land in the county, to which there are that number of separate conflicting claims, some derived from purchases for state and county taxes, others from the liquidating board or commissionres, and others by the original owners, what a multitude of ramified and intricate questions arise as to who "shall redeem," and in showing cause why a sale should not be made. Each claimant to every separate parcel must deraign and set forth his own separate right, either to redeem or to show cause why his parcel should not be sold. The statute manifestly intends that there shall be, or may be, as many separate and independent litigations as there may be separate tracts held under different rights.

In the history of the "due course of law," can any precedent be found of a suit, intended in so peremptory and speedy a manner to conclude so many parties and so many and such various rights?

One has been cited for the plaintiffs in error quite analogous to this (Webster v. Reid, 11 How., S. C., 459), which was characterised by the court as "extraordinary." An act was passed by the territorial legislature of Iowa with a view to settle claims to lands owned by the half breed Indians in Lee county, partition them or make sale for the benefit of the claimants. Brigham,

Wilson and Young were appointed commissioners to carry out the object, who were to receive six dollars per day for their services. Judgments were obtained by two of the commissioners for their services, and under these judgments the entire tract of the half breeds was sold.    Suit was brought under a special statute, requiring notice by publication in a newspaper with no other " designation " of the defendants, than " owners of the half breed lands in Lee county."    Held, that the judgments under which the lands were sold were void.    The reason assigned is, that the defendants did not have notice.    In the case at bar, the notice was addressed to "all persons claiming interest in the lands." The parties interested may be as numerous as in the case cited, but with this distinguishing difference, that their interests were in severalty, under separate titles, without a single element of even tenancy in common.    Whereas it appears that the "half breed Indians" were cotenants.    We must look at the nature of the suit and the character of the contests that may spring up under it.    This proceeding brings within its range a possible controversy with every claimant, and in each separate controversy, no other persons are interested except the one or more asserting right to the specific parcels.

The course of judicial process, as heretofore established in our laws, was where the subject was local, but the necessary defendants could not be reached by ordinary process, to give notice by publication to the absent and nonresident, addressed to them by name. · There is an exceptional case or two dispensing with naming the defendants, in proceedings against the unknown heirs of a decedent, where the plaintiff does not know and cannot ascertain their names.

But there is no instance in our legal history where a judicial process has been allowed in personal suits, dispensing with notice, actual or constructive, addressed to the parties by name, to be charged thereby, where it could be readily ascertained who they were.    As we have seen, the practice has been so uniform and

ancient, that the defendants must be named, if known, and that they must have personal notice by due service, or a constructive notice by some means, which the legislature has prescribed, as calculated to come home to the party, that a departure from it in a special case would be obnoxious to the objection that it was not according " to due process of law." It is manifest that many, if not most of the persons claiming these lands are nonresidents of the state and of the respective counties where the suits were brought. It is also evident that the names of many, if not most of those were known, or could have been known to the levee commissioners. Yet the law directed that they should not be made defendants by name or other description. The statute was framed on the idea that, because the act of 1865 impressed upon the land a lien for the taxes, that it was competent to give a remedy in the nature of a suit *in rem*. The lien was given to make the demands of the levee board paramount to all incumbrances which the tax payers could impose or suffer on their property. But if the suits were merely dependent for support on the liens, it did not thereby become a " proceeding *in rem* " any more than would detinue, replevin or foreclosure suits of mortgages or other liens. 2 Brocken, *supra*.

It is *ultra vires* of the legislature to break down the essential and fundamental distinctions and differences which have always existed in the nature of judicial processes. In those trials affecting life, liberty or property, where, according to the system of law transmitted to us, the jury has been the triers of the fact, the constitution assures that mode of trial by declaring " the right of trial by jury shall *remain* inviolate." If, in the judicial history which has borne upon its current a body of jurisprudence to us, it has ever been the " right " of the people, in personal suits, to be notified, in some appointed formula, of the proceedings against them, so that they may have opportunity to appear and make defense, then that right is guaranteed by putting a restraint upon organized power, not to deprive of life, liberty or property except by " due course or due process of law."

Our jurisprudence has always regarded suits to recover chattels or to foreclose a mortgage, as personal suits, entitling the defendants to personal notice. If the legislature should enact that, hereafter, they shall be proceedings *in rem*, and that the seizure of the horse, or other effects, or of the mortgaged premises, shall confer jurisdiction and operate as constructive notice, it would be too plain for argument that the legislature was without power to thus uproot and turn aside the " due course of law." The motions to dismiss the appeals, and the reasons advanced in their support, illustrate the anomaly of the proceeding, viz : that the appellants were not named as parties, and the record did not show that either of them claimed and had interest in the lands ; and there was no mode declared by which they could show their interest and obtain the appellate review of this court. What is alleged of them is true of every other having claim or interest.

Property is older than governments and constitutions. The right to life, liberty and property, was not conferred by society. The highest obligation of government is to defend and protect persons in their enjoyment. From the earliest ages of the law, these natural rights have been hedged around with certain immunities and privileges which experience has shown to be necessary for their security and defense. For centuries the inviolability of person and property, against unusual and extraordinary invasions of power, has been the birthright of British subjects. From their *magna charta*, the principle has been transcribed into the American constitutions.

It is the distinguishing and beneficent characteristic of the jurisprudence to which it belongs. That great doctrine, with the trial by jury, has largely aided to develop a strong and vigorous civilization and free governments, chiefly because these natural rights are placed beyond the reach of executive, legislative power, exerted in an extraordinary and unusual manner, that the Anglo-Saxon race have shown such reverence and devotion to the common law, and have consecrated in this country beneficent principles in constitutional guarantees.

We think that the special statute under which the suit was brought is in contravention of the constitution, because,

It proposes to bind and conclude the interests of persons in private property without designating them by name as defendants, without a good or any sufficient reason for such departure from the general law.

Because it expressly denies personal service of process upon the defendants, when it is evident that many, perhaps most of them are residents of the county and state, and amenable to such process.

Because, in a personal suit, it directs notice by publication, without designating the names of the defendants, when many, if not most of them, by the general law, were entitled to personal service of notice, and when that form of publication directed is only allowable, and in instances where the complainant does not know, and has not the means of finding out the names of parties.

Because it allows judgment against a very large, but indefinite number of persons, who have, or may have, conflicting interests as against each other, as well as the plaintiffs, whose rights may be different in origin and extent, so that it would be impossible, according to the established modes of procedure under the general law, to bring such a multitude of persons before the court; or to investigate, determine and adjust in one decree, the number of independent litigations that might arise. That being impracticable, if not impossible, in the due course of the law, it is not competent to acccomplish it by the extraordinary mode authorized by this statute.

Because the statute and the proceedings under it are unusual, extraordinary, and not calculated to afford a full investigation, and proper determination of any separate controversy that might arise, but likely to result in wrong and injustice to many individuals.

Because the proceeding authorized is extraordinary and unusual, without precedent in the legislative and judicial history of this state.

Because it has the seeming of giving judicial sanction, and

thereby conclusiveness, to a decree for the sale and transfer of property, when the legislature itself was incompetent to direct the sale to be made, and when, according to the law of the land, the chancery court could not take cognizance and adjudge in the circumstances named in the act.

We are of opinion, therefore, that the decrees of the respective chancery courts are *coram non judice,* and of no validity, and are reversed.