Trumbull, J. The facts of this case are briefly these. One Clinton had a raft of lumber at the mouth of Fever River, which he proposed to sell to Bloomer, of Galena, whom he was owing. Bloomer declined purchasing, but made advances upon the raft under an arrangement with Clinton that it was to be sent down the Mississippi river and sold. Out of the proceeds of the sale, the expenses of taking the raft to market were first to be paid, then the sum. due Bloomer including his advances, and the balance was to be paid over to Clinton. Johnson, a clerk in the employ of Bloomer, went down the river, and at Quincy made sale of the raft to Denman, who advanced to him part of the purchase money rvhich was used by Johnson in paying off the hands upon the raft. Subsequently the sale to Denman was rescinded, and Johnson gave Denman a draft upon Bloomer for the amount he had received from Denman, and for certain expenses that had been incurred by the latter in taking charge of the raft. The raft was subsequently sold by Johnson, and the proceeds paid over to Bloomer, but he refused to accept the draft drawn on him by Johnson, and this action was brought by Den-man to recover the amount. The jury found in Denman’s favor and he had judgment. It is asserted here, that no such privity of contract existed between Denman and Bloomer, as would authorize the former to maintain this suit. In determining this question, Denman is entitled to all the inferences legitimately arising from the finding of the jury, and if the Court can see that they were warranted by the evidence in inferring a state of case .that would sustain the action, it is bound to uphold the judgment, even though it should he of opinion, that there was a slight preponderance of evidence against the finding. Clinton, who was introduced as a witness on the part of Bloomer, testified; “ that he made an arrangement with Bloomer to send the raft down the Mississippi river for sale on witness’ account, that Bloomer agreed to advance in contemplation of a sale, that the raft was to be sent down the river at the risk and cost of witness, that the proceeds were to be applied first to pay the expenses of the raft, the amount of defendant’s debt and advances were to be paid out of the proceeds and the remainder to be paid over to witness,” that the hands on the raft were in witness’ employ, “that he was informed by Bloomer that he would send Johnson, the clerk, down the river with the raft for the purpose of 2naking the sale, that witness assented to this arrangement and agreed to pay Johnson $25, for his trouble, &e.” This evidence taken by itself, clearly shows that Bloomer had control of the raft, and that Johnson was his agent to make sale of the same. Bloomer was “ to send the raft down the Mississippi river for sale” on Clinton’s account, and the very fact, that the balance was stipulated to a he paid over” to Clinton, shows that the proceeds of the raft were not to he received by him. Mo man in possession of his own money, after agreeing to pay certain claims out of the same, would further stipulate with the claimants, that the balance should be paid over to himself. It is true that in another part of his evidence, Clinton says that Johnson was acting for him in the sale of the raft. In one sense it is true that both Johnson and Bloomer were acting for Clinton. He had put the 3'aft into Bloomer's hands to he sold on his account, and he might, therefore, well say that both Bloomer and his clerk were acting for him in making the sale; but if he meant to be understood as saying that Johnson was acting for him, otherwise than as the clerk of Bloomer, he was evidently mistaken, as such a statement would contradict the substance of' the transaction, as he had previously stated it. Johnson testified “that he considered himself as the agent of Clinton in selling the raft, paying off and discharging the hands, and accounting for the a-esidue of the proceeds after paying Bloomer’s debt and advances, and that he was Bloomer’s agent only to secure his debt and advances out of the proceeds of the raft.” What Johnson may have eonsidered cannot alter the real character of the transaction as shown by the other evidence in the cause. In a previous part of his testimony he had stated an agreement between Clinton and Bloomer that he should go down the river and make sale of the raft, and Clinton states that Bloomer informed him that he, Bloomer, would send Johnson to make the sale. By what process he was transformed from Bloomer’s clerk, into Clinton’s agent, is not very apparent from the record. At all events a verdict that the raft was placed under Bloomer’s control to be sold, and that Johnson was his agent to make the sale, is not so manifestly against the evidence, as to call upon the Court to set it aside. Assuming then, in accordance with the finding of the jury, that Johnson was Bloomer’s agent, and as such authorized to sell the raft, it is clear that his principal is liable for his acts in and about such sale. It was decided when this case was here before, 11 Ills., 177, that if Johnson had authority to make the sale to Denman, he had authority to rescind it, and it follows as a necessary consesequencc, that when such sale was rescinded, his principal became liable to refund the money which had been paid upon it, in an action for money had and received; 1 Ch. Pl., 356; Towers v. Barrett, 1 Term R. 133; Gillet v. Maynard, 5 John., 85. The 1, 2, 3, 4 and 7, instructions given to the jury in behalf of the plaintiff below, have also been objected to. The principles of law involved in the first and second instructions, have been substantially settled in disposing of the main question in the case. The third lays down the proposition, that a party is not permitted to deny the truth of the representations of his duly authorized agent about the subject matter of his agency, upon the faith of which another has acted. Of the correctness of this proposition there can be no question. Story on Agency, sec. 134. The fourth instruction asserts no principle of law not recognized by the previous ones. The seventh instruction, although it contains a correct proposition of law, was inapplicable to the case, and ought for that reason, to have been refused; but we do not thinkthe jrrcould have been misled by it, particularly when considered in connection with the fourth instruction, given on behalf of the defendant. The refusal to give the first and fifth instructions asked by defendant, is also alleged as error. These instructions contain correct propositions of law so far as they go, and yet we can readily perceive how they might have misled the jury if given. Clinton may have been, and was in fact the general owner of the property, and Johnson might be regarded in one sense as his agent in selling the raft, although Bloomer may at the same time have had a special property in the raft, authorizing him "to sell and control it, and Johnson may have been his clerk for that purpose. Had these instructions excluded the idea that Bloomer had a special property in the raft, and that Johnson was also his agent in making the sale, it would clearly have been error to have refused them. The authorities referred to by appellant’s counsel clearly show, that in a case of such a character, to authorize a recovery in an action for money had and received, a privity of contract must exist between the parties, and .there would be none in the case supposed. Judgment affirmed.