MICHAEL BOYLE, Appellant, *v.* ANN LEVINGS, Appellee.

### APPEAL FROM JOE DAVIESS.

Where it appears that a jury did not understand the evidence, which is strongly against the verdict, and that injustice has been done, the judgment will be reversed.

THIS was an action of trover for a promissory note. The declaration also charged a conversion of bank notes and coin.

The general issue was pleaded; also a special plea that the note which was payable to the plaintiff below, was only nominally hers, but really the property of the defendant below.

Verdict and judgment for plaintiff. The defendant below appealed.

M. Y. JOHNSON,. and LELAND & LELAND, for Appellant.

B. C. COOK, for Appellee.

BREESE, J. The evidence in this cause is so strong in favor of the defendant below, as to cause a well-grounded apprehension, either that the jury did not understand it, or sympathized so strongly with the plaintiff, as to prevent their receiving and appreciating the force of it. The evidence shows most conclusively there were two certificates of deposit given by the Bank of Galena, one a small one for about one hundred and eighty dollars, of recent date ; the other for upwards of seven hundred dollars, being the old certificate, on which a large amount of interest had accumulated. This is the testimony of Perkins, the teller of that bank. He says they were both in the name of the plaintiff, but about the last of March or first of April, 1857, the wife of the defendant and the plaintiff came to the bank, and drew out the deposit and delivered up the certificates. That he calculated the interest on them, and paid the money over to the plaintiff, Ann Levings. Mrs. Boyle did most of the talking, and wanted witness to pay Ann seven per cent. instead of six, and compound interest, on the ground that Ann was a poor, hard-working girl, and the money had been there so long. He did not notice any division of the money, or who carried it off; thinks the interest on the old certificate amounted to one hundred and fifty-seven dollars, and but a trifle on the more recent and smaller certificate.

One *Roberts* testified, that he was overtaken on the road going home from Galena, by defendant and his wife, in a two-horse wagon, and he got in and rode. Carter's banking house

had suspended at that time, in which he had money deposited. Mrs. Boyle asked him how he got along with Carter, and said Ann had drawn her money from Corwith's bank, and deposited it with Carter, and that it would be a pity for Ann, a poor girl, to lose her money, and she thought he ought to pay her. Boyle took no part in the conversation.

*James Carter* testified, that on the ninth of April, 1857, there was deposited in his bank, about nine hundred dollars, to the credit of Ann Levings; that in October, after he had suspended, the defendant's wife, Margaret Boyle, called on him for the money, and as he knew Mrs. Boyle and Ann both, he told her he had nothing to do with her—that the money stood on his books as the money of Ann Levings, and she must bring Ann; do n't remember that she showed him the certificate of deposit, but he stated that he only knew Ann in the transaction, as the money stood on his books in her name. Soon after, he says, Ann and Mrs. Boyle came to the banking house together, and wanted payment of the certificate. Ann's case had been specially called to his attention as a peculiar one—then gave her the note on Harris & Co. for $926.80, which paid the amount of the deposit and interest. They both did the talking. The note was made payable to Ann Levings, and was dated October 16, 1857.

This note, it appears, was put in suit in the name of Ann Levings, for the use of Michael Boyle, and judgment obtained, and the amount collected by Boyle, the defendant, and for which money, so obtained, this action is brought. In this suit, Ann interpleaded, which fact went to the jury as evidence only to show that she did not assent to the prosecution of the suit.

The defendant then introduced and examined *Mrs. Creighton,* who testified, that she was the sister of Ann Levings, and Margaret Boyle, the defendant's wife; that the defendant and his wife had been in this country about seventeen years, and that the plaintiff had been in this country about ten years; that witness, plaintiff, Matthew Levings, their mother and her child, came over from Ireland together; that her sister Ann had been at service as a hired girl ever since she had been in this country, except about three years; that she lived off and on, and made her home at Margaret's, (the defendant's wife.) That last May, two years ago, witness was in Galena, and had been below town to see another sister, and returning with Ann, the plaintiff, she had a conversation with her, in which Ann stated to witness, that she and Margaret (the defendant's wife) had drawn their money from Corwith's bank, and she (Ann) had loaned her money (two hundred) to Curley & Omara, at ten per

Boyle *v.* Levings.

cent. interest, and Margaret had deposited her money in Mr. Carter's bank, in her (Ann's) name. She did not state the amount Margaret had deposited in her name. She did say she had loaned her money (two hundred dollars) to Curley & Omara, at ten per cent. This is all the talk she had about the money.

*Jane McGinn* testified, that she was a niece of the plaintiff, and defendant's wife, and acquainted with all the parties; that two years ago last Christmas, witness and Ann Levings, the plaintiff, were at the defendant's house — Margaret Boyle, the defendant's wife, had gone to Galena; that she had a conversation with Ann Levings, in which Ann told her the money belonged to Mrs. Boyle, and asked witness if she thought it would be a sin for her to keep it. Nothing was said about where the money was, the amount, or in whose name it was. Witness further testified, on cross-examination, that no bad feeling existed with her against the plaintiff; that she never had any quarrel with her, and that Mrs. Boyle had never promised her a dress after the suit was determined.

*Mrs. P. Levings* testified, that she was the sister-in-law of the plaintiff, and defendant's wife, and that she had known all the parties for twenty-five years; that the defendant and his wife had been in this country about seventeen or eighteen years, the plaintiff about ten years; that plaintiff made her home at defendant's house for about three years of the time she has been in this country; that the defendant is a neat, tidy, good, industrious and economical girl; that six years ago this summer, the plaintiff was at her house, and at that time told her that her mother wanted her (Ann) to take Margaret's money, and for them to go back to Ireland and live on it.

On cross-examination, witness said there had never been any difficulty between her and Ann; that Ann had not been to her house for two years, when her son was sick.

*Matthew Levings* testified, that he was the brother of plaintiff and of the defendant's wife; that he has been in this country ten years; that he came over in company with the plaintiff, his mother, sister, and a child of Mrs. Creighton; that the money that brought them over was contributed by the plaintiff, his mother, himself, and a part was sent over to them from this country by his brother, Patrick Levings, and his sister, Margaret Boyle, wife of the defendant; that the whole made about forty pounds; that he was the purser or cashier, and before they got to Galena the money was all spent; that on arriving at Galena, he had to borrow from his friends here six dollars to pay the freight on their baggage; (Ann's amongst the rest.) He states that Ann had no property in Ireland that he knew of, and does

not know of her having any money; that for eight or nine years in Ireland, before they came to America, Ann was at service and hired with a counselor in Dublin, and received, as he understood, ten pounds a year, boarding and lodging. Don't know but she may have had money and I not known it. This witness further testified, that in A. D. 1852, he was sick at defendant's house, and while there, his mother showed him upwards of $600 of Margaret's money, in gold, and that he counted it himself. Witness further states, in A. D. 1853, he deposited three hundred dollars in bank; that Ann, the plaintiff, loaned him some fifteen or twenty dollars of the money to make up that amount—at the same time she gave him one hundred dollars of her money to deposit in his name, which he did, and it remained in his name until the fall of A. D. 1854, when he was going to New York, when he drew his money, and hers, and paid it to her.

*Thomas Simpson* testified, that he had lived here for thirty years, and knew what had been the wages of hired girls for the last ten years; said the wages had been from six to ten dollars per month; that it would average about eight dollars per month for a good girl during that time; that hired girls had to clothe themselves; that he had daughters, and knew something about what it would cost a year to clothe them; said it would take all they made to satisfy some of them, depending on the girls; but it would not cost less than forty dollars a year, at least. Witness, on cross-examination, said his estimate was a mere guess.

*Edward Irwin* testified, that he had known the defendant, Boyle, for about sixteen years; that during all that time he had been in good circumstances, and an independent farmer.

This testimony we think shows conclusively, that it was not possible for Ann to have, at the time the deposit was withdrawn from the Bank of Galena, so large an amount of money as was contained in the old certificate. She was out of money when she landed at Galena, seven years previously, and for three years had been out of service, living with her sister, Mrs. Boyle, leaving four years in which to earn, by wages, her money, which would be a sum about equal to the amount specified in the small certificate, after deducting for her clothing and other necessary expenses. Her brother Matthew states, that in 1852, he counted at Mrs. Boyle's house six hundred dollars in gold, of Mrs. Boyle's money, which, if deposited soon after, would have produced about the amount of interest Perkins says he calculated on the old certificate, when they, in company, withdrew their deposit.

The fact that Mrs. Boyle called it Ann's money, was a device to get more interest; and when speaking about it to Roberts in her husband's presence, it might have been, and doubtless was her policy, to keep the fact that she had so large a sum of money from the knowledge of her husband, as some women do not like to trust their husbands with such knowledge.   The testimony of the sister, Mrs. Creighton, makes the matter very plain.   Ann told her that she and Margaret (Mrs. Boyle) had drawn their money from Corwith's Bank, and she (Ann) had loaned hers (two hundred) to Curley & Omara, at ten per cent. interest, and Margaret had deposited hers in Mr. Carter's Bank, in her, Ann's, name.   Placing implicit confidence in her sister, and wishing to keep from her husband the knowledge of the possession of so large a sum of money, she has it deposited, not only in Corwith's Bank, but with Mr. Carter, in her sister's name, and on settlement with Carter is willing to take Harris' note, payable to her sister.

So the testimony of the sister-in-law, Mrs. P. Levings, goes to show that Ann and her mother had designs upon this money to appropriate it to their own use.

We make no remark on the testimony of Jane McGinn, as that is somewhat weakened by the testimony of her brother.

The testimony of Matthew Levings, her brother, shows very clearly Ann could not own so much money, and that it belonged to her sister, Mrs. Boyle, and from her confidence in her, suffering her to deposit it in her name, she has incurred the hazard of losing it altogether.

We think the evidence is strongly against the verdict, and that justice has not been done.   We accordingly reverse the judgment, and remand the cause.

*Judgment reversed.*