THOMAS GUNN *vs.* UNION RAILROAD COMPANY.

PROVIDENCE—JULY 31, 1901.

PRESENT : Stiness, C. J., Tillinghast, Rogers, Douglas, Dubois, and Blodgett, JJ.

(1)  *Constitutional Law.    Right to grant New Trial.    Verdict against Evidence.    "Due Process of Law."    Jury Trial.*

The Appellate Division of the Supreme Court has the constitutional right to grant a new trial in a civil case, when in its opinion the verdict is against the weight of the evidence.

Gen. Laws cap. 251, §§ 5, 11, authorizing the Appellate Division to grant a new trial "for reasons for which a new trial is usually granted at common law," is not violative of the constitution of Rhode Island, article I, section 10, or of the fourteenth amendment to the constitution of the United States, as depriving a person of property without due process of law ; nor is it in contravention of the constitution of Rhode Island, article I, section 15, providing that the right to trial by jury shall remain inviolate.

At the time of the separation of the American colonies from the mother country, the common law of England authorized the granting of a new jury trial in a proper case, on the ground that the former verdict was against the weight of the evidence ; and this fact was a common-law reason at the time of the adoption of the constitution of 1843, within the meaning of Gen. Laws cap. 251, § 5.

While Gen. Laws cap. 251, § 5, prescribes *reasons,* it does not prescribe *methods* of procedure ; nor can the meaning of the former term be stretched to include the latter.

It is not necessary, in order not to contravene the constitution either of

Rhode Island or the United States, that the justice presiding at the jury trial should first pass upon the question whether the verdict is against the weight of the evidence, or that he should sit with the court required to pass upon that question in granting a new trial for that reason.

Sketch of the history of awarding new trials in the colony and State.

TRESPASS ON THE CASE for negligence. Heard on constitutional questions by the full bench. Motion of plaintiff to dismiss defendant's petition for new trial and to direct the Common Pleas Division to enter judgment on the verdict of the jury denied.

ROGERS, J. This suit is trespass on the case for negligence brought in the Common Pleas Division, wherein, upon a jury trial, the plaintiff obtained a verdict against the defendant for $10,000 ; and thereupon the defendant brought it to this Division on a petition for a new trial on the ground, among others, that the verdict was against the law and the evidence and the weight thereof. On December 28, 1900, this Division filed its opinion granting the petition on the ground that the verdict was against the weight of the evidence. See 22 R. I. 321. On the same day, to wit, December 28, 1900, the plaintiff moved that this Division dismiss the defendant's petition for a new trial and direct the Common Pleas Division to enter judgment on the verdict of the jury in said action,—

"First. Because the record in said case shows that to grant a new trial on the grounds therein set forth would be in violation of the constitution of Rhode Island, and also of the constitution of the United States, to wit, of the fourteenth amendment to said constitution of the United States, wherein it is provided that no state shall 'deprive any person of life, liberty or property, without due process of law.'

"Second. Because the court in its opinion has 'granted the defendant's petition for a new trial' on grounds which the record shows deprive the plaintiff of his right to a trial by jury, and of his property, 'without due process of law :'"

Five days later the plaintiff filed a motion for leave to re-argue the petition for a new trial, which motion was heard by three judges on grounds other than constitutional, and

was denied in an opinion filed April 10, 1901. See 22 R. I. 579. The court retained the plaintiff's motion to dismiss on constitutional grounds until after it had finally passed upon the petition for a new trial on other than constitutional grounds, retaining the constitutional question for hearing and determination under that clause of Gen. Laws R. I. cap. 222, § 3, which reads as follows, viz. : "that whenever practicable as many more than three as possible of all the justices of the supreme court shall sit in the appellate division in the hearing and determination of such constitutional questions." Accordingly the plaintiff's motion to dismiss on constitutional grounds was heard at length before six judges on June 8, 1901.

The provisions of the constitution of Rhode Island which went into operation on the first Tuesday of May, 1843, relating to juries, are sections 10 and 15 of article 1, and are as follows, viz. :

"SEC. 10. In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury ; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defence, and shall be at liberty to speak for himself ; nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land."

"SEC. 15. The right of trial by jury shall remain inviolate."

The last clause of article 1, section 10 of our State constitution, though grammatically it seems to apply only in favor of persons accused of crime, has been held to apply to all persons, whether accused of crime or not. *Reynolds* v. *Randall*, 12 R. I. 522, 526.

Article 1, section 15, means simply that in those proceedings in which a right to trial by jury existed at the time of the adoption of the constitution the right shall still continue ; the constitution requiring the conservation, not an extension, of the right of jury trial. *Crandall* v. *James*, 6. R. I. 144, 148 ;

*Mathews* v. *Tripp*, 12 R. I. 256, 258; *Bishop* v. *Tripp*, 15 R. I. 466, 469; *Merrill* v. *Bowler*, 20 R. I. 226, 228; *The Narragansett Indians*, 20 R. I. 715, 766.

(1)     The provision of the statute under which the petition for a new trial is brought is Gen. Laws R. I. cap. 251, § 5, which is in part as follows, viz.; "Either party to a civil suit, or suit in form civil, commenced in the common pleas division, . . if he deem himself aggrieved by any direction, ruling or decision of such division in any matter of law raised by the pleadings, or apparent upon or brought upon the record by a statement of the rulings, or of the evidence and the rulings thereon, or, if the case has been tried by a jury, deem himself entitled to a new trial for reasons for which a new trial is usually granted at common law, . . . shall be entitled in any of such cases to have his petition for a new trial . . . heard before and decided by the appellate division of the supreme court upon complying with the following course of procedure."

The influence of the law of England upon this State has been ever present since early colonial days. In the royal charter of 1663 the power to make laws granted thereunder, was "so as such laws, ordinances and constitutions, so made, be not contrary and repugnant unto, but, as near as may be, agreeable to the laws of this our realm of England, considering the nature and constitution of the place and people there."

Trial by jury was early established here, and in October, 1677, the General Assembly enacted that "either the plaintiff or defendant shall each of them have liberty of one rehearing if either of them desire it and no more." The person desiring the rehearing had to give bond and pay costs, and, in the words of the statute, "this cost not to be recoverable again except ye Jury see good cause to give it." Public Laws of Rhode Island (1636–1705), 26. By act of the General Assembly passed in May, 1680, it was provided that if either plaintiff or defendant be aggrieved after judgment entered in court upon review he might appeal to the next

General Assembly.   Public Laws of Rhode Island (1636–1705), 32.

Various modifications of the statute relating to jury trials took place from time to time until in 1843, when our State constitution went into operation, a litigant could obtain at least two jury trials.   In the language of Durfee, C. J. in *Mathews* v. *Tripp*, 12 R. I. 256, 257,—"At the time of the adoption of the constitution the Supreme Court, or, as it was then called, the Supreme Judicial Court, had only appellate jurisdiction in civil jury cases, original jurisdiction being conferred in 1847.   Previously, the course of procedure was to commence the action, if the amount involved exceeded twenty dollars, in the Court of Common Pleas, and for either party aggrieved by the judgment to appeal to the Supreme Judicial Court.   There was thus opportunity for two jury trials, one in the Court of Common Pleas and the other in the Supreme Judicial Court; but it was in the power of either party to prevent the jury trial in the Court of Common Pleas by submitting to judgment and taking an appeal.   Even this, however, did not exhaust the privilege of jury trial.   For either party aggrieved by the judgment of the Supreme Judicial Court was entitled within one year to review the same, 'and have one trial more in the same court.'   Digest of 1822, p. 133.   There was no further trial except for cause. Trial by review was abolished by the revision of 1844, after the adoption of the constitution."

At the time our State constitution went into operation section 5 of "An act to establish a Supreme Judicial Court" was in full force, which gave that court the power to grant new trials in cases decided therein or in any Court of Common Pleas for various reasons specified; and said section contained this clause, viz.: "and the said court shall also have power to grant new trials in cases where there has been a trial by jury, for reasons for which new trials have been usually granted at common law."   Digest of 1822, p. 109.

It is clear that our ancestors prior to our present State constitution found trial by jury so fallible that it was necessary to provide for more than one trial.   In England as well

as in the older States of America, two hundred years ago, trial by jury was in a state of evolution. The old law of attaints against a jury as a means of reversing a verdict against the evidence was apparently obsolete both in England and in this country before the American Revolution. Note to *Erving* v. *Cradock*, Quincy, 560, by Horace (Mr. Justice) Gray.

Sir William Blackstone, writing in or about 1765 (3 Com. Chitty's ed., 388–392), says : "Formerly the principal remedy, for reversal of a verdict unduly given, was by writ of attaint. . . . But such a remedy as this laid the injured party under an insuperable hardship, by making a conviction of the jurors for perjury the condition of his redress. The judges saw this ; and therefore very early, even upon writs of assise, they devised a great variety of distinctions, by which an attaint might be avoided, and the verdict set to rights in a more temperate and dispassionate method. . . When afterwards attaints, by several statutes, were more universally extended, the judges frequently, even for the misbehavior of jurymen, instead of prosecuting the writ of attaint, awarded a second trial ; and subsequent resolutions, for more than a century past, have so amplified the benefit of this remedy, that the attaint is now as obsolete as the trial by battle which it succeeded ; and we shall probably see the revival of the one as soon as the revival of the other. . . . If every verdict was final in the first instance, it would tend to destroy this valuable method of trial, and would drive away all causes of consequence to be decided according to the forms of the imperial law, upon depositions in writing, which might be reviewed in a course of appeal. . . . The jury are to give their opinion *instanter ;* that is, before they separate, eat, or drink. And under these circumstances the most intelligent and best intentioned men may bring in a verdict, which they themselves upon cool deliberation would wish to reverse.

"Next to doing right, the great object in the administration of public justice, should be to give public satisfaction. If the verdict be liable to many objections and doubts in the

opinion of his counsel, or even in the opinion of by-standers, no party would go away satisfied unless he had a prospect of reviewing it.   Such doubts would with him be decisive : he would arraign the determination as manifestly unjust, and abhor a tribunal which he imagined had done him an injury without a possibility of redress.

"Granting a new trial, under proper regulations, cures all these inconveniences, and at the same time preserves entire and renders perfect that most excellent method of decision, which is the glory of the English law.   A new trial is a rehearing of the cause before another jury, but with as little prejudice to either party, as if it had never been heard before.   .   .   .

"Nor is it granted where the scales of evidence hang nearly equal : that which leans against the former verdict ought always very strongly to preponderate."

*Bright* v. *Eynon*, 1 Burr. 390, decided in the King's bench in 1757, was a motion for a new trial upon which the judges gave their opinion, granting the new trial, *seriatim*.   Lord Mansfield, *inter alia*, said, page 393,—"Trials by jury, in civil causes, could not subsist now without a power, somewhere, to grant new trials.   If an erroneous judgment be given in point of law, there are many ways to review and set it right.   Where a court judges of fact upon depositions in writing, their sentence or decree may, many ways, be reviewed and set right.   But a general verdict can only be set right by a new trial ; which is no more than having the cause more deliberately considered by another jury, where there is a reasonable doubt, or perhaps a certainty, that justice has not been done.

"The writ of attaint is now a mere sound in every case : in many it does not pretend to be a remedy.   There are numerous causes of false verdicts, without corruption or bad intention of the jurors.   They may have heard too much of the matter before the trial, and imbibed prejudices without knowing it.   The cause may be intricate ; the examination may be so long as to distract and confound their attention.   .   .   .

"If unjust verdicts obtained under these and a thousand

like circumstances, were to be conclusive forever, the determination of civil property, in this method of trial, would be very precarious and unsatisfactory. It is absolutely necessary to justice, that there should upon many occasions, be opportunities of reconsidering the cause by a new trial. . . . .

"It is not true 'that no new trials were granted before 1655,' as has been said from Style, 466."

After referring to Slade's case, which was in 1648, reported in Style, 138, and to *Wood* v. *Gunston*, in 1655, Style, 466, Lord Mansfield proceeds: "The reason why this matter cannot be traced further back is, 'that the old report-books do not give any accounts of determinations made by the court upon *motions*.'

"Indeed, for a good while after this time, the granting of new trials was holden to a degree of strictness, so intolerable, that it drove the parties into a court of equity, to have, in effect, a new trial at law, of a mere legal question, because the verdict, in justice, under all the circumstances, ought not to conclude; and many bills have been retained upon this ground, and the question tried over again at law, under the direction of a court of equity. And therefore of late years, the courts of law have gone more liberally into the granting of new trials, according to the circumstances of the respective cases. And the rule laid down by Lord Parker, in the case of the *Queen against the corporation of Helston, H.* 12 Ann. B. R. (Lucas, 202) seems to be the best general rule that can be laid down upon this subject; viz. 'Doing justice to the party,' or in other words 'attaining the justice of the case.'

"The reasons for granting a new trial must be collected from the whole evidence, and from the nature of the case considered under all its circumstances."

Mr. Justice Denison concurring, added "that it would be difficult perhaps to fix an absolutely general rule about granting new trials, without making so many exceptions to it as might rather tend to darken the matter than to explain it; but the granting a new trial, or refusing it, must depend upon the legal discretion of the court, guided by the nature

and circumstances of the particular case, and directed with a view to the attainment of justice."

"Mr. Justice Foster agreed to the propriety of what had been said, as to such cases in which the juries give verdicts against evidence, and even as to cases where there may be a contrariety of evidence, but the evidence upon the whole, in point of probability, greatly preponderates against the verdict; (which, depending on a variety of circumstances, is matter of legal discretion, and cannot be brought under any general rule;) but in all cases where the evidence is nearly *in equilibrio,* he declared that he should always think himself bound to have regard to the finding of the jury, for '*ad questionem facti respondent juratores.*'"

Other cases in which new trials were granted in England prior to the American Revolution, are *Berks* v. *Mason,* Sayer, 264, decided in 1756; *Goodtitle* v. *Clayton,* in 1768, 4 Burr. 2224; and *Norris* v. *Freeman,* in 1769, 3 Wil. 38. In *Marsh* v. *Bower,* 2 Black. W. 851, heard in 1773, the action was for words spoken, and the words were fully proved on the trial, but the jury found for the defendant. The court refused a new trial solely on the ground of triviality, declaring "that they would not grant a new trial for the sake of six-pence damages, in mercy to the plaintiff as well as the defendant."

The authorities above cited satisfy us that, at the time of the separation of the American colonies from the mother country, the common law of England authorized the granting of a new jury trial, in a proper case, on the ground that the former verdict was against the weight of the evidence.

In this State the decisions of this court, as well those denying, as those granting a new trial, recognize that the granting of a new trial upon a strong preponderance of testimony has been the long-established rule. See *Johnson* v. *Blanchard,* 5 R. I. 24; *Patton* v. *Hughesdale,* 11 R. I. 188; *Watson* v. *Tripp,* 11 R. I. 98, 103; *Chafee* v. *Sprague,* 15 R. I. 135; *Sweet* v. *Wood,* 18 R. I. 386; *Lake* v. *Weaver,* 20 R. I. 46.

For a large number of cases in other States upon the proposition that when a verdict is clearly against the weight of

the evidence, it is the duty of the court to set it aside and order a new trial, see 16 A. & E. Enc. of Law (1st ed.), 554, note 7.

The plaintiff in the case at bar contends that it was an essential provision of the common law that motions for new trials should be addressed to the trial court. One judge, however, as we understand it, went upon circuit, and the judges in banc sat upon motions for a new trial, and though the opinion of the judge that sat on the jury trial was listened to with much respect, yet it was not final ; otherwise there would have been no reason for the others sitting and going through the idle form of expressing their opinion as they were wont to do. Reference to the old cases hereinbefore cited seems to show that. In *Marsh* v. *Bower, supra,* the report of the case says : "Lord Mansfield, who tried the cause on the Home Circuit reported," &c., but "The court unanimously declared," etc.

In this State the General Assembly exercised the power to grant a new trial for a long time preceding the adoption of the constitution. Pub. Laws R. I. Rev. of 1798, p. 170 ; Rev. of 1822, p. 129. Whatever effect the right of appeal from the Court of Common. Pleas to the Supreme Court had in practically having the jury trial before the same tribunal that heard the petition for a new trial, that only continued so long as the quorum of the Supreme Court to try jury cases, and that to try petitions for a new trial, continued the same. In June, 1852, it was enacted that "from and after the passage of this act, any one justice of the Supreme Court shall be a quorum of said court for all purposes and business whatever, except for the trial of  .  .  .  petitions for new trials," etc. Pub. Laws R. I., June session 1852, p. 115. As the Supreme Court had concurrent jurisdiction with the court of Common Pleas in jury cases over a certain amount involved, and appellate jurisdiction in jury cases commenced in the Common Pleas, one judge in the Supreme Court was a quorum for trying such jury cases, in whatever court first brought, from June 1852 down to 1893, and a judge of the Supreme Court always held the Common Pleas Court, but it required two

judges of the Supreme Court to constitute a quorum to try petitions for a new trial, it alone having jurisdiction to try such petitions; and since 1893 three judges are required to constitute a quorum to try petitions for a new trial.

In 16 A. & E. Enc. of Law (1st ed.), 618, is the following statement, viz.: "In the absence of statute regulations, the general rule is that an application for a new trial must be addressed to the court in which the cause was tried, and under circumstances rendering it necessary, it may be made to the judge who presided at the trial, during vacation. This rule is particularly applicable, and of nearly universal application in case of motions for new trial for errors of fact. Where a judge dies or goes out of office, however, his successor may entertain the motion, and where a cause has been transferred from one district to another by a change of lines or otherwise, such a motion may be heard by the proper tribunal in the new district, while power to entertain such motions has been conferred by statute in many and perhaps all of the states upon courts other than those in which the trial took place, in cases and under circumstances and conditions differing greatly in the different states."

In 3 Waterman on New Trials, 1214, is this statement, viz.: "Notwithstanding, however, the evident want of qualification of the Appellate Court to form a correct opinion as to the conformity of the evidence with the verdict, in this country it is generally permitted to exercise a discretion in the premises."

Our statute provides that a new trial by jury may be granted "for reasons for which a new trial is usually granted at common law." We have already expressed the opinion that the verdict's being against the weight of the evidence was a common-law reason at the time of the adoption of our State constitution; but while *reasons* are prescribed, methods of procedure are not, and it seems to us utterly unreasonable to try to stretch the application of the word *reasons*, to methods of procedure, so that in the lapse of years, reaching it may be to centuries, no change, or development, or improvement, no adaptation to altered conditions or circum-

stances, can be made or permitted without making unconstitutional the very same reasons that are still being adhered to.

Granting a new trial is exercising a discretion, and, with us, as in many other States, is a power not confided to a single justice. The exercise of that discretion, when depending upon the weight of the evidence, necessitates some knowledge of the evidence, and in this State that knowledge is furnished by a stenographic report of the evidence—questions, answers, and rulings—typewritten out at length, made by a sworn officer of the court and verified by the allowance of the justice presiding at the jury trial, or, if that be not possible, then verified by affidavit. In this way all the judges have equal opportunities of judging of the evidence, and are not dependent upon the prejudices or peculiarities of any *one* man.; and, as they will not grant a new trial because of the verdict being against the weight of the evidence, unless it is against a clear and decided preponderance thereof, if they have any question in the matter they will invariably sustain the verdict. Though the justice presiding at a jury trial has some opportunity, perhaps, of weighing the evidence, that other justices have not, yet he is also subjected to greater probability of having prejudices awakened, so that in some states the disadvantages are deemed to outweight the advantages of his sitting on a petition for a new trial, and, in this State, it is provided by statute, that "no justice shall sit in the trial of any cause . . . in which he has presided in any inferior court, or in any case in which the ruling or act of such justice sitting alone or with a jury is the subject of review, except by consent of all the parties." Gen. Laws R. I. cap. 221, § 4.

"Trial by jury," said Durfee, C. J., in *Matthews* v. *Tripp*, 12 R. I. 258, "is a well known kind of trial. The right of trial by jury, as secured by the constitution, is in our opinion simply the right to that kind of trial. And the right remains inviolate so long as the jury continues to be constituted substantially as the jury was constituted when the constitution was adopted, and so long as all such cases which were then triable by jury continue to be so triable without any

restrictions or conditions which materially hamper or burden the right."

"A new trial," to repeat the words of Sir William Blackstone, hereinbefore quoted, "is a rehearing of the cause before another jury, but with as little prejudice to either party, as if it had never been heard before;" while Lord Mansfield said in *Bright* v. *Eynon*, already referred to, that a new trial "is no more than having the cause more deliberately considered by another jury, where there is a reasonable doubt, or perhaps a certainty, that justice has not been done."

Would the granting of a petition for a new trial in this case by this court, on the ground that the verdict is against the weight of the evidence, be against "the law of the land" as those words are used in our State constitution, and would it violate the fourteenth amendment of the constitution of the United States, for being "without due process of law?"

Referring to the words "the law of the land," as used in our State constitution, Durfee, C. J., in *State* v. *Beswick*, 13 R: I., 211, 218, said : "This phrase has a historical origin. It was borrowed from *Magna Charta*, and, as has been repeatedly decided, means the same as 'due process of law.'" The phrase "due process of law," is found in both the fifth and the fourteenth amendments of the constitution of the United States. In the fifth amendment the provision is only a limitation of the power of the general government; it has no application to the legislation of the several States. See *The Liquors of Fitzpatrick*, 16 R. I. 60, 63 ; *State* v. *Brown & Sharpe Mfg. Co.*, 18 R. I. 16, 20 ; *Hallinger* v. *Davis*, 146 U. S. 314, 319. In the fourteenth amendment, however, the provision is extended in terms to the States.

The definition of "due process of law," given by Mr. Justice Edwards in *Westervelt* v. *Gregg*, 12 N. Y. 202, 209, is quoted with approval by Judge Cooley in his work on Constitutional Limitations (6th ed.), 433, and also by Durfee, C. J., in *State* v. *Beswick*, who characterizes it as "not only concise but very accurate." "Due process of law undoubtedly means," said Edwards, J., "in the due course of legal pro-

ceedings, according to those rules and forms which have been established for the protection of private rights."

This court said in *Carr* v. *Brown*, 20 R. I. 215, 218, when referring to the same constitutional provisions that are now before us, speaking through Tillinghast, J., delivering the opinion, "What is due process of law, within the meaning of constitutional provisions like these, has been many times expounded by the Supreme Court of the United States, and also by the highest courts of the various States. And the results of these interpretations may be briefly summed up by saying that the words 'due process of law' mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights."

In *Missouri* v. *Lewis*, 101 U. S. 22, 31, Mr. Justice Bradley, delivering the opinion, said : "The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two states separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each state prescribes its own ·modes of judicial proceeding."

In *Brown* v. *Levee Commissioners*, 50 Miss. 468, the Supreme Court of Mississippi speaking of the meaning of the phrase "due process of law," uses these words which are quoted approvingly by Mr. Justice Matthews in *Hurtado* v. *California*, 110 U. S. 516, 536, viz.: "The principle does not demand that the laws existing at any point of time shall be irrepealable, or that any forms of remedies shall necessarily continue. It refers to certain fundamental rights which that system of jurisprudence, of which ours is a derivative, has always recognized. If any of these are disregarded in the proceedings by which a person is condemned to the loss of life, liberty, or property, then the deprivation has not been by 'due process of law.'"

Judge Cooley in his work on Constitutional Limitations (6th ed.), 434, says : "The principles, then, upon which the

process is based are to determine whether it is 'due process' or not, and not any considerations of mere form. Administrative and remedial process may be changed from time to time, but only with due regard to the landmarks established for the protection of the citizen."

To similar effect as to "due process of law," see also *State Board of Health* v. *Roy*, 22 R. I. 538, 544; *Walker* v. *Sauvinet*, 92 U. S. 90; *Hurtado* v. *California*, 110 U. S. 516; *Iowa Central R. R. Co.* v. *Iowa*, 160 U. S. 389; *People* v. *Supervisors*, 70 N. Y. 228; 2 Hare's Am. Con. Law, 859; 10 A. & E. Enc. of Law (2nd ed.), 301, 305.

In our opinion it is not necessary in order not to contravene the constitution either of this State or of the United States that the justice presiding at the jury trial should first pass upon the question whether the verdict is against the weight of the evidence, or that he should sit with the court required to pass upon that question, in granting a new trial for that reason.

We are of the opinion that this court has the constitutional right to grant a new trial in a civil case when in its opinion the verdict is against the weight of the evidence, and that granting such new trial in the case at bar, would not be a violation of the constitution either of this State or of the United States. The plaintiff's motion, therefore, that this Division dismiss the defendant's petition for a new trial and direct the Common Pleas Division to enter judgment on the verdict of the jury in this action, is denied.

*Charles E. Gorman*, for plaintiff.
*David S. Baker*, for defendant.