(No. 25064.—<span style="background:black">    </span>

JOHN F. CORCORAN, Plaintiff in Error, *vs.* THE CITY OF CHICAGO, Defendant in Error.

*Opinion filed April 10, 1940—Rehearing denied June 5, 1940.*

CHARLES C. SPENCER, and RICHARD M. SPENCER, for plaintiff in error.

BARNET HODES, Corporation Counsel, (ALEXANDER J. RESA, J. HERZL SEGAL, L. LOUIS KARTON, and SYDNEY R. DREBIN, of counsel,) for defendant in error.

Mr. JUSTICE MURPHY delivered the opinion of the court:

John F. Corcoran, plaintiff in error, referred to as plaintiff, began a suit in the superior court of Cook county against the city of Chicago, referred to as defendant, to recover damages for personal injuries alleged to have been caused by the negligent acts of the defendant. The cause was tried with a jury and resulted in a verdict for the plaintiff for $5000. A motion for new trial was overruled and judgment entered on the verdict. On appeal, the Appellate Court for the First District reversed the judgment and remanded the cause for another trial. The plaintiff filed a motion in the Appellate Court asking that the remanding part of the order be stricken. The motion was supported by affidavit that another trial would involve the same issues and that no additional or different evidence could be presented by the plaintiff. The motion was granted, and the case is here for review on a common law writ of error. Defendant moved to dismiss the writ for want of jurisdiction, and such motion was taken with the case. A proper consideration of the motion, and the points urged for and against it, makes it necessary to state the error assigned by plaintiff on the merits.

The negligence charged was that defendant had carelessly and negligently permitted certain streets to be and remain in an unsafe condition for travel in that there were depressions, obstructions, holes and uneven places in the surface of the street which rendered it unsafe and dangerous to persons riding in or driving vehicles along the same, and that by reason of such conditions the automobile in which plaintiff was riding was overturned causing injuries to plaintiff. There was evidence which tended to prove the negligence charged but, on the other hand, there was evidence which, if true, showed the street to be in a reasonably good state of repair. The opinion of the Appellate Court is confined to a review of the evidence bearing upon

the question of negligence. The evidence was conflicting. The Appellate Court found the verdict was against the manifest weight of the evidence and reversed the judgment for that reason.

It is conceded the power which the Appellate Court assumed to exercise in reviewing the evidence and setting aside the verdict is found in section 92(3b) of the Civil Practice act, (Ill. Rev. Stat. 1939, chap. 110, par. 216) which provides that Appellate Courts may review "error of fact, in that the judgment, decree or order appealed from is not sustained by the evidence or is against the weight of the evidence." Plaintiff's position is that such provision, as applied to facts found by a jury upon conflicting evidence, as in the instant case, is unconstitutional, in that the findings of the Appellate Court deprive the successful party of the benefits of the verdict and take from him the right to a trial by jury as guaranteed by section 5 of article 2 of the constitution.

In support of defendant's motion to dismiss the writ it is urged (a) the remanding clause of the order of the Appellate Court was stricken on plaintiff's motion, and that without such part being stricken plaintiff had the right to another jury trial and can not now be heard to complain that he has been deprived of a jury trial, for it was his action that induced the Appellate Court to change the order; (b) the validity of the statute was not raised in apt time, and (c) that this court will not pass on a point which was not submitted to the Appellate Court before it decided the case.

The order of the Appellate Court as first entered was not final. Under it plaintiff had the right to have his case submitted to another jury but, as appears from the affidavit, he had no additional or different evidence and had he recovered a verdict on the second trial, on appeal he would have been confronted with the same defects in the record for which the Appellate Court reversed the first judgment.

The striking of the remanding clause made the order final and appealable, and had the effect of depriving plaintiff of a right to another jury trial in the event the judgment of the Appellate Court is sustained. The procedure adopted has been followed in other cases in which this court took jurisdiction and disposed of the case on its merits. (*Hartley* v. *Red Ball Transit Co.* 344 Ill. 534; *Devine* v. *Pfaelzer*, 277 id. 255.) Plaintiff's action in causing the remanding part of the order to be stricken does not, in itself, bar him from urging the invalidity of the statute under which the Appellate Court acted.

Defendant's contentions that the validity of the statute was not raised in apt time, and that this court will not pass on a question which was not submitted to the Appellate Court before its decision, will be considered together. The validity of section 92 (3b) was raised for the first time in the Appellate Court on plaintiff's petition for rehearing. This was the first opportunity plaintiff had to question the validity of the act for, prior to the filing of the opinion, he could not anticipate either affirmance or reversal or whether the power of the court would be exercised under section 92 (3b) for error of fact or under other provisions for error of law. Where the constitutionality of an act affecting the jurisdiction of the Appellate Court is first questioned in that court it has the authority to pass upon the validity of the act. *Bagdonas* v. *Liberty Land and Investment Co.* 309 Ill. 103.

Section 11 of article 6 of the constitution provides for the creation of inferior Appellate Courts of uniform organization and jurisdiction, upon which jurisdiction may be conferred and from which appeals and writs of error shall lie to this court in all criminal cases and cases in which a franchise or freehold or the validity of a statute is involved, and in such other cases as may be provided by law. By sub-paragraph 2 of section 75 of the Civil Practice act, (Ill. Rev. Stat. 1939, chap. 110, par. 199) the General

Assembly has made provision for this court to review the judgments and decrees of the Appellate Court in certain cases, but excepted those cases wherein appeals are specifically required by the constitution to be allowed from the Appellate Court to the Supreme Court. In *Bagdonas* v. *Liberty Land and Investment Co. supra,* it was held that this court acquires its jurisdiction to review judgments of the Appellate Court in cases where the validity of a statute is involved, by virtue of this constitutional provision and not by the Practice act.

That part of sub-paragraph 2 of section 75 referred to is substantially the same as section 121 of the Practice act of 1907. The difference between the two provisions is, the act of 1907 excepted those cases wherein "appeals and writs of error" were specifically required by the constitution to be taken from the Appellate Court to this court, while the present act excepts cases wherein "appeals" are required. Under the act of 1907 it was held that no method of review by appeal had been provided in a case where the validity of a statute was first raised in the Appellate Court, but that the constitutional question could be reviewed in this court on a common law writ of error. (*Sixby* v. *Chicago City Railway Co.* 260 Ill. 478.) The omission of the words "and writs of error" in the present act does not change the rule which prevailed prior to the adoption of the Civil Practice act. The right to review such question by common law writ of error still exists. The motion to dismiss the writ of error is denied.

Prior to 1837, the law of this State was that the granting or refusal of a motion for a new trial rested in the sound discretion of the trial court and the ruling thereon could not be urged as error in the court of review. (*Harmison* v. *Clark,* 1 Scam. 131; *Sawyer* v. *Stephenson,* Breese, 24; *Street* v. *Blue,* id. 261; *Adams* v. *Smith,* id. 283; *Vernon, Blake & Co.* v. *May,* id. 294; *Littleton* v. *Moses,* id. 393.) In 1837, an act was passed which pro-

vided "exceptions taken to opinions or decisions of circuit court overruling motions in arrest of judgment, motions for new trials and for continuance of causes shall hereafter be allowed and the party excepting may assign for error any opinion so excepted to, any usage to the contrary notwithstanding." The substance of the act of 1837 was reenacted as section 23 of chapter 83 of the Practice act of 1845 (Rev. Stat. 1845, p. 416) and in the form then adopted became section 83 of the Practice act of 1907, (Smith-Hurd Stat. 1931, chap. 110,) and paragraph 3b of section 92 of the present act is, in effect, the same as the prior enactments, so that the section in question has been the statutory law of this State since 1837.

Neither the act of 1837, nor any of the succeeding acts, have been challenged on constitutional grounds such as are raised against the present act in the instant case. In *Smith* v. *Schultz,* 1 Scam. 490 (1838), in considering an error assigned on the court's ruling on a motion for new trial it was said: "At common law, the decision of a court upon an application addressed to its discretion, can not be assigned for error, and such has been the uniform decision of this court. But by an act of the legislature, this principal of law has been changed, and an appeal will now lie from the decision of a court refusing an application for a new trial." After the passage of the 1837 act this court, in several cases, considered the statute as vesting it with power to review the evidence on assignment of error of fact and, in at least two cases, verdicts were set aside as being against the manifest weight of evidence. In *Keaggy* v. *Hite,* 12 Ill. 99, (1850,) the jury returned a verdict for the plaintiff. In reviewing error assigned on the overruling of a motion for new trial the court said: "How the jury, with this evidence before them, could return the verdict they did is matter of surprise. The testimony as it appears in the record, preponderates altogether in favor of the appellant, and though this court is reluctant to set aside a

verdict as contrary to evidence, which the judge who presided at the trial had refused to disturb, yet when the record discloses a case in which the jury have found so manifestly against the evidence as in this instance, it would be doing injustice to permit their verdict to stand." In *Higgins* v. *Lee,* 16 Ill. 495, (1855,) it was said that a new trial should have been granted for the reason that the verdict failed to do substantial justice.

The effect of the operation of the statute was considered in *Chicago and Rock Island Railroad Co.* v. *McKean,* 40 Ill. 218, a case where the trial court had overruled a motion for new trial and error was assigned on such ruling. Mr. Justice Breese, speaking for the court, said: "This brings before us all the evidence in the case, and on the force to which it is entitled, we are required to pronounce. By the common law and the practice under it which prevailed for ages, the refusal to grant a new trial could not be assigned as error. Such was the law and the practice in this State up to 1837, when the legislature, in its wisdom, declared by an act of July 21, of that year, that exceptions taken to opinions or decisions of the circuit courts overruling motions for new trial should be allowed, and the party excepting might assign for error any opinion so excepted to. * * * This statute bestows upon this court the power to supervise every verdict that may be rendered in any of the courts of record of this State. * * * The policy of this legislative enactment has been, and may well be questioned, as it brings before a tribunal, other than a jury, that which, in the institution of trial by jury, was for their determination alone, that is, the facts of a case. An appellate court was, before the passage of that act, judge of the law only, to decide wherein, in the case brought before it, the rules of law had been misapplied or violated. The old and honored maxim once was, 'the judges respond to the law, the jury to the facts,' but now, by this innovation, the judges of an appellate court have as much power

over the facts as the jury had in the first instance, for it is undeniable this court may set aside a verdict if the facts fail to satisfy it of its propriety. This control, so bestowed upon this court, is unqualified and unlimited and therefore we say the verdict of every jury is subject to the control of this court. Yet, with a view to abridge this power very soon after the passage of the act, this court laid down certain rules by which it would be governed in disposing of such cases. The first case which came to this court, after the enactment of this statute, was the case of *Smith* v. *Schultz,* at December term, 1838, by appeal, (1 Scam. 490), where it was held, the court would not grant a new trial when, in its opinion substantial justice had been done though the law arising on the evidence would have justified a different result." Other cases decided under the act of 1837 recognized the power of the court, given by statute to review the evidence but the verdict in each case was permitted to stand for it was not considered to be against the manifest weight of the evidence. (*Allen* v. *Smith,* 3 Scam. 97; *Ellis* v. *Locke,* 2 Gilm. 459; *Evans* v. *Fisher,* 5 id. 569; *Dawson* v. *Robbins,* id. 72; *Mann* v. *Russell,* 11 Ill. 586; *Welden* v. *Francis,* 12 id. 460; *Bishop* v. *Busse,* 69 id. 403.). Since the adoption of the constitution of 1870 the Appellate Courts, in the exercise of their appellate jurisdiction, have reviewed the evidence in many cases and set aside judgments on the ground that the verdict was against the manifest weight of the evidence.

Frequent reference is made in the briefs to *Borg* v. *Chicago, Rock Island and Pacific Railway Co.* 162 Ill. 348, *Mirich* v. *Forschner Contracting Co.* 312 id. 343, and other cases of similar import. What was said in those cases is not controlling here for the question there under consideration involved the validity of statutes which authorized the Appellate Courts to review evidence, make findings of fact different from that found by the jury and to reverse the cause without remanding it. In the instant case, the statute

does not vest the Appellate Court with power to reverse for error of fact where the evidence is conflicting, without remanding the cause for another trial.

Plaintiff contends that on all questions of fact where the evidence is conflicting the verdict of the jury can not be set aside as being against the weight of the evidence except by the court that tried the case, and asserts that such was the practice at common law. In view of this contention it becomes material to consider briefly the practice in such matters at common law, for the successive constitutions of this State have ever guaranteed the right of trial by jury and it has been repeatedly held by this court that the right of trial by jury means the right as was known at the common law and enjoyed at and before the adoption of the respective constitutions. *People* v. *Kelly,* 347 Ill. 221; *George* v. *People,* 167 id. 447.

At an early date in the development of the common law the courts were centered at Westminster. A suit was instituted by filing it in the court at that place. When it was ready for trial it was sent to the county where the cause of action arose. Jurors were summoned to appear in such county and the King commissioned one of the judges of the court at Westminster to try the case. These courts came to be known as courts of *assize* and *nisi prius.* The judge at *nisi prius* presided at the trial, received the verdict and returned the record with the verdict and the proceedings attached in the form of a *postea* to the court at Westminster. When the judge at *nisi prius* had received the verdict and returned the papers to Westminster his office as *nisi prius* judge in that case was *functus officio,* and his commission was exhausted. Thereafter, the record was reviewed by the court *en banc* at Westminster and judgment entered. Motions for new trial were made to the court at Westminster. (26 Yale L. J. p. 57.) At an early time the *nisi prius* judge certified his approval or dissatisfaction with the result of the verdict and it became a guide for the courts

sitting *en banc* in Westminster. Forsyth, in History of Trial by Jury, at page 190, says: "When there is conflicting evidence it is not usual to grant a new trial unless the evidence for the prevailing party be very slight and the judge declare himself dissatisfied with the verdict." The certificate of the *nisi prius* judge was not controlling, for in Bacon's Abridgment, volume 6, at page 654, it is said that the case of *Wood* v. *Gunstun,* decided in 1655, was the first case reported in the books wherein a new trial was granted, but that it ought not from thence to be concluded that this was the first instance of granting a new trial, for that the silence of reporters as to this matter may be in part due to its not having been formerly the practice to report what was done by courts upon motions; and on page 664 it is stated that a new trial was in some cases refused notwithstanding the verdict was, in the opinion of the judge before whom the cause was tried, contrary to the weight of the evidence.

In 3 Blackstone's Commentaries (Cooley's ed.) p. 387, it is said: "Formerly the principal remedy for reversal of a verdict unduly given was by writ of attaint, * * * but such a remedy as this laid the injured party under an insuperable hardship by making a conviction of the jurors for perjury the condition of his redress. The judges saw this and therefore very early, even upon writs of *assize* they devised a great variety of distinctions by which an attaint might be avoided and the verdict set to rights in a more temperate and dispassionate method. * * * If every verdict was final in the first instance, it would tend to destroy this valuable method of trial and would drive away all causes of consequence to be decided according to the forms of the imperial law, upon depositions in writing; which might be reviewed in a course of appeal. * * * Next to doing right the great object in the administration of public justice should be to give public satisfaction. * * * Granting a new trial under proper regulations

\* \* \* renders perfect that most excellent method of decision which is the glory of the English law. A new trial is a rehearing of the cause before another jury, but with as little prejudice to either party, as if it had never been heard before. \*. \* \* A sufficient ground must, however, be laid before the courts to satisfy them that it is necessary to justice that the cause should be farther considered. If the matter be such as did not or could not appear to the judge who presided at *nisi prius,* it is disclosed to the court by affidavit; if it arises from what passed at the trial it is taken from the judge's information; who usually makes a special and minute report of the evidence. Counsel are heard on both sides to impeach or establish the verdict, and the courts give their reasons at large why a new examination ought or ought not to be allowed. The true import of the evidence is duly weighed, false colors are taken off, and all points of law which arose at the trial are upon full deliberation clearly explained and settled."

*Bright* v. *Eynon,* 1 Burrows, 391, decided in the King's Bench in 1757, was a motion for new trial upon which the judges gave their opinion granting the new trial. Lord Mansfield, at page 393, said: "Trials by jury in civil causes could not subsist now without power somewhere to grant new trials. If an erroneous judgment be given in point of law, there are many ways to review and set it right. When a court judges a fact upon depositions in writing, the sentence or decree may, many ways, be reviewed, and set right. But a general verdict can only be set right by a new trial which is no more than having the cause more deliberately considered by another jury, where there is a reasonable doubt or perhaps a certainty that justice has not been done. The writ of attaint is now a mere sound. in every case. In many it does not pretend to be a remedy. There are numerous causes of false verdicts without corruption or bad intention of the jurors. They may have heard too much of the matter before the trial, and imbibed

prejudices without knowing it; the cause may be intricate, the examination may be so long as to distract and confound their attention. * * * If unjust verdicts obtained under these and a thousand like circumstances, were to be conclusive forever, the determination of civil property in this method of trial would be very precarious and unsatisfactory. It is absolutely necessary to justice that there should upon many occasions be opportunities of reconsidering the cause by a new trial. * * * It is not true 'that no new trials were granted before 1655' as has been said from Style 466." After referring to *Slade's case,* which was in 1648, reported in Style 138, and to *Wood* v. *Gunston* (1655), Style 466, Lord Mansfield proceeds: "The reason why this matter can not be traced further back is that the old report books do not give any accounts of determinations made by the court upon motion."

The rule laid down by Lord Parker in *Reg.* v. *Corporation of Helston,* 10 Mod. 202, was that the purpose shall be "doing justice to the party, or in other words, attaining the justice of the case. The reasons for granting a new trial must be collected from the whole evidence and from the nature of the case considered under all the circumstances."

There are statements in some of the later cases which support plaintiff's contention that at common law the power to award a new trial on the grounds the verdict was against the weight of the evidence, rested solely in the trial court. Such statements seem to be partially based on the theory that the trial judge saw and heard the witnesses testify and was for that reason in a better position to consider the evidence than the judges of a court of review who had not had such opportunity. As has been noted, at the early common law, motions for a new trial were addressed to the court at Westminster and not to the judge who presided at the trial. The judges of Westminster acted only on the record before them and, as Blackstone said, "it was clearly held that whatever matter was of force to avoid a verdict

ought to be returned upon the *postea.*" The judge at *nisi prius* was a member of the court at Westminster. The function of that court was to review the record and proceedings returned to it and determine whether judgment should be entered. Blackstone says, volume 3, at page 386: "If any defect of justice happened at the trial by surprise, inadvertance˙or misconduct, the party may have relief in the court above by obtaining a new trial." The judges of the court at Westminster had no opportunity of seeing the witnesses or hearing them testify. The credibility and weight of the evidence was determined from the records and proceedings before them.

From the authorities cited and others which have been examined, we conclude that there was a practice at common law which authorized courts exercising appellate jurisdiction to set aside verdicts on the grounds the findings of fact were not supported by the evidence. Such practice has been authorized in this State by statute since 1837. Immediately following the adoption of the act of 1837, this court recognized that if a court of review was to exercise a power of supervision over verdicts and set them aside when considered as being against the weight of the evidence, it must be done judiciously and only under circumstances where the interests of justice demanded it. The same limitations on the power were recognized at common law. It is apparent that any other rule would constitute the judges of the reviewing court the triers of the facts and thus take from the parties their constitutional right to a trial by jury. In the exercise of the power conferred by the act of 1837, and during the time when appeals and writs of error were brought direct from the trial court to this court, certain definite rules were announced as a guide where verdicts were attacked on questions of fact. It was said the court would not disturb a verdict upon facts for any slight preponderance in testimony, (*Bloomer* v. *Denman,* 12 Ill. 240; *Goodell* v. *Woodruff,* 20 id. 191;) but if there is a strong

preponderance the verdict will be set aside, especially where apparent injustice has been done. (*Boyle* v. *Levings,* 24 Ill. 223; *Clement* v. *Bushway,* 25 id. 182. Again, this court said a verdict will not be disturbed unless the finding is clearly wrong, (*French* v. *Lowry,* 19 Ill. 158; *Bush* v. *Kindred,* 20 id. 93; *Carpenter* v. *Ambroson,* id. 170; *Cross* v. *Carey,* 25 id. 461;) and where the evidence is conflicting the verdict will not be set aside even though it may be against the weight of the evidence, (*Morgan* v. *Ryerson,* 20 Ill. 343; *Martin* v. *Ehrenfels,* 24 id. 187; *Pulliam* v. *Ogle,* 27 id. 189;) and in *Fish* v. *Roseberry,* 22 Ill. 288, it was held that the courts will seldom interfere with the finding of a jury in actions *ex delicto.* These cases are not referred to as being all-inclusive of the rules under which a verdict of a jury may be disturbed, but to illustrate the strict limitations under which the power should be exercised by an Appellate Court.

This court is without jurisdiction to determine whether or not the Appellate Court correctly analyzed the evidence. The principal question for determination was the constitutionality of the statute and that is decided in the affirmative.

Courts of review of other jurisdictions which have sustained statutes similar to the one in question are *Gunn* v. *Union Railway Co.* 23 R. I. 289, 49 Atl. 999; *Smith* v. *Times Publishing Co.* 178 Pa. St. 481, 36 Atl. 296; *Hintz* v. *Michigan Central Railroad Co.* 132 Mich. 305, 93 N. W. 634.

For the reasons assigned, the judgment of the Appellate Court is affirmed.               *Judgment affirmed.*